**THE LAW OFFICE OF MICHAEL DAVID DOUGLAS (MDDLegal)**
Michael David Douglas, Esq. (SBN 265210)
mdouglas@mddlegal.com
606 Venice Blvd. #318
Venice, CA 90291
Telephone: (760) 815-3453

Attorney for Plaintiff,
DOS AMICAS LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOS AMICAS LLC, a Nevada Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> KATIE OSBORN SPIRKO, an individual; DANA CROSLAND MCLENDON, an individual; and DOES 1-10, inclusive, <br><br> Defendants. | Case No:  2:26-cv-4915 <br><br> **PLAINTIFF'S COMPLAINT FOR:** <br> **(1) Breach of Contract;** <br> **(2) Breach of the Implied Covenant of Good Faith and Fair Dealing;** <br> **(3) Intentionally Inducing Breach of Contract;** <br> **(4) Intentional Interference with Prospective Economic Advantage;** <br> **(5) Copyright Infringement – 17 U.S.C. § 501, *et seq.*; and** <br> **(6) Civil Conspiracy** |

Plaintiff DOS AMICAS LLC ("Plaintiff" or "Dos Amicas"), a Nevada Limited Liability Company, files this Complaint against Defendants KATIE OSBORN SPIRKO, DANA CROSLAND MCLENDON, and DOES 1 through 10, inclusive, and alleges as follows:

### THE PARTIES, JURISDICTION & VENUE

1.     Plaintiff, Dos Amicas, is a Nevada Limited Liability Company with its principal place of business in Los Angeles County, California doing business as an

1

**COMPLAINT**

out-of-state LLC in California based on recent registration with the California Secretary of State.

2.     The managing members of Dos Amicas are Natasha Pavlovich ("Pavlovich"), a resident of Illinois, and Irena Alexandrova ("Alexandrova"), a resident of Los Angeles County, California.

3.     Defendant Katie Osborn Spirko, PsyD, HSP ("Spirko") is a Forensic & Clinical Neuropsychologist who, based on information and belief, resides in and does business in Nashville, Tennessee.

4.     Defendant Dana Crosland McLendon ("McLendon") is an attorney licensed to practice law in the State of Tennessee pursuant to Tennessee "BPR Number" 016214 who, based on information and belief, resides in and conducts business in Franklin, Tennessee.

5.     Defendants designated in this Complaint as DOES 1 through 10 inclusive are entities and individuals whose names Plaintiff is currently unaware of, and Plaintiff therefore sues these Doe Defendants by such fictitious names. After discovery, which is necessary to ascertain these Doe Defendants' true names and capacities, Plaintiff will amend its Complaint to allege the necessary identifying details.

6.     At this time, Plaintiff alleges that DOES 1 through 10 inclusive, each bear responsibility for the allegations and damages alleged by Plaintiff in this Complaint, either as independent actors, agents, employees and/or co-conspirators with the Spirko and McLendon, had full knowledge of and gave substantial assistance to the alleged activities, and by virtue of such knowledge and engaging in such actions is legally responsible for the acts and omissions of the Spirko and McLendon as well as each other.

7.     This Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1332 given complete diversity of citizenship exists between Plaintiff and all Defendants and the amount in controversy, as reflected by Plaintiff's assessment of its damages to be proven at trial exceeds $75,000.00.

2

**COMPLAINT**

8. In addition, this Court has subject matter jurisdiction over all of Plaintiff's causes of action pursuant to 28 U.S.C. § 1367(a) based on supplemental jurisdiction arising out of Plaintiff's Fifth Cause of Action for Copyright Infringement - 17 U.S.C. § 501, *et seq*. over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

9. On June 13, 2024, Spirko signed an agreement with Dos Amicas entitled Appearance Release ("Release") (the "Appearance Release Agreement") which, in pertinent part, provided "[t]his Release shall be governed by and construed in accordance with the laws of the State of California applicable to agreements made entirely therein and the parties hereto agree to submit to jurisdiction in the State of California in the City and County of Los Angeles." *See* **Exhibit A – Appearance Release ("Release").**[1]

10. Based on the Ms. Spirko's agreement to the Forum Selection Clause in the Appearance Release Agreement, she has consented to jurisdiction in this forum. *See e.g., SEC v. Ross,* 504 F.3d 1130, 1149 (9th Cir.2007).

11. By virtue of acting as Spirko's co-conspirator in carrying out the violations of law set forth in further detail in the balance of this Complaint, McLendon has also availed himself to jurisdiction in this Court by virtue of enabling and participating in the breach of the Appearance Release Agreement, engaging in tortious interference with Plaintiff's prospective economic advantage, and infringing upon Plaintiff's copyright in the subject-matter of the Appearance Release Agreement.

12. Venue is appropriate in this District given the Appearance Release Agreement provides "the parties hereto agree to submit to jurisdiction in the State of California in the City and County of Los Angeles." *See* **Exhibit A**.

///

---

[1] Although the Appearance Release Agreement contains confidentiality provisions, Spirko has waived the right to enforce such provisions by first filing a copy of the Appearance Release Agreement in the incorrect Tennessee forum without Dos Amicas' consent.

3

**COMPLAINT**

## THE TENNESSEE ACTION

13.     On October 1, 2025, Spirko filed an action in the Chancery Court of Davidson County, Tennessee captioned *Spirko v. Dos Amicas LLC, et al.* Davidson County, Tennessee at Nashville, Tennessee, Case No. 25-1383-III (the "Tennessee Litigation"). A copy of the Complaint filed in the Tennessee Litigation is attached to this Complaint as **Exhibit B**.

14.     Via the Tennessee Litigation, Spirko seeks declaratory relief that the Appearance Release Agreement is "invalid, void, voidable, and/or unenforceable" and seeks injunctive relief preventing Dos Amicas from enforcing the Appearance Release Agreement against Spirko.

15.     Spirko is represented by McLendon in the Tennessee Litigation.

16.     Dos Amicas, Pavlovich and Alexandrova, by way of special appearance and not acquiescing to jurisdiction in Tennessee, responded to the Complaint filed in the Tennessee Litigation with a Motion to Quash Service of Process, Deny a Request for Default Judgment as a result of ineffective service, and to Dismiss the Tennessee Litigation based on lack of personal jurisdiction over Dos Amicas, Pavlovich and Alexandrova in Tennessee and the forum selection clause for the City and County of Los Angeles as specified in the Appearance Release Agreement.

17.     The hearing on Dos Amicas, Pavlovich and Alexandrova's motions in response to the Complaint in the Tennessee Litigation is set for hearing on May 8, 2026.

18.     Due to the lack of personal jurisdiction over Dos Amicas, Pavlovich and Alexandrova in Tennessee and the valid and enforceable Los Angeles County forum selection clause in the Appearance Release Agreement, this Action in this Court is the appropriate forum for obtaining a determination of the parties' rights and obligations pursuant to the Appearance Release Agreement, as well as Plaintiff's additional damage claims against Spirko, McLendon and the Doe defendants.

///

4

**COMPLAINT**

## THE PROJECT & DEFENDANTS' BREACH OF CONTRACT, INTERFERENCE AND INFRINGEMENT

19.    Spirko and Dos Amicas' managing member, Natasha Pavlovich, were acquaintances when Spirko was assigned to work as a court-appointed psychologist in connection with a family law matter Ms. Pavlovich was a party to in or around 2019.

20.    In or around November 2023, Spirko became involved in her professional capacity as a Forensic & Clinical Neuropsychologist with the legal proceedings surrounding charges filed against Zach and Dylan Adams for the alleged murder of Holly Bobo in Tennessee (the "Adams Proceedings").

21.    Knowing of Pavlovich's extensive experience in the film and documentary industries, Spirko informed Dos Amicas of her involvement with the Adams Proceedings, in hopes that Dos Amicas would utilize its experience to develop and produce a documentary regarding the Adams Proceedings.

22.    As alleged in Spirko's Complaint in the Tennessee Litigation, Spirko sought Dos Amicas knowledge and experience for the purpose of "creating a project" about the Adams Proceedings.

23.    In connection with such request, Spirko promised to and did provide Dos Amicas access to information regarding the Adams Proceedings Dos Amicas would not otherwise have access to, as well as the opportunity to observe and film Spirko's work associated with the Adams Proceedings.

24.    Leading up to 2024, Spirko was in consistent communication with Dos Amicas regarding the production of a documentary project regarding the Adams Proceedings.

25.    Part of such communication was Dos Amicas advising Spirko that if Dos Amicas was to pay production costs associated with such a project, Spirko would be required to sign an exclusivity agreement, to which she agreed.

26.    Spirko also agreed to obtain the consent, as well as exclusivity agreements, from key contributors Cindy and Doug Adams.

**COMPLAINT**

27. In or around June 2024, Dos Amicas agreed to produce a documentary with an initial working title of "The Zachary and Dylan Adams Story" (the "Project") for which Dos Amicas maintain and possess "[a]ll rights in and to the Materials and the Production" which would be "[Dos Amicas'] sole and absolute property with the right, throughout the word, including under copyright, to use and license to use, all or any portion of the Materials." *See* **Exhibit A** (second full paragraph).

28. Dos Amicas anticipated Spirko playing an integral role in the Project which would expose her to the screen in an entertainment-based documentary to be marketed to various streaming platforms and outlets via Dos Amicas' connections in the industry.

29. Dos Amicas understood Spirko's main goal in participating in the Project was to seek to make a name for herself in the entertainment industry while simultaneously continuing to advance and market her work as a court-appointed psychologist and advocate for Zach Adams, a key player in the Adams Proceedings.

30. Accordingly, in consideration of the visibility and associated marketing opportunity the Project would provide Spirko, Dos Amicas required Spirko to sign the industry standard Appearance Release Agreement that protects Dos Amicas rights in the subject-matter of the Project which was being developed in the highly competitive and increasingly saturated "true crime" documentary marketplace.

31. Contrary to Spirko's allegations advanced in the Tennessee Litigation, Dos Amicas made Spirko aware of and explained the nature of the necessity of Spirko and other key contributors to the Project signing the Appearance Release Agreement before cameras began rolling and content was generated.

32. Spirko was well aware of the financial opportunities her involvement in the Project would yield, not only to herself but also McLendon, and conveyed such understanding to Dos Amicas.

33. Both Dos Amicas and Spirko were excited to begin production on the Project in or around June 13, 2024 when Spirko executed the Appearance Release

**COMPLAINT**

Agreement and Dos Amicas provided a camera crew to shoot footage of Spirko attending a hearing in the Adams Proceedings in Savannah, Tennessee.

34. Following the initial shoot in June 2024, Dos Amicas continued with necessary back-end development of the Project and planning to develop the Project in an entertainment-based and informative manner.

35. However, in or around May 2025, Spirko's motivations relating to the Project and the content she agreed to provide and maintain confidential and solely for use in connection with the Project in development by Dos Amicas, began to shift.

**SPIRKO & MCLENDON'S COMPETING ENDEAVOR & EFFORTS TO STIFLE PRODUCTION OF THE PROJECT**

36. Plaintiff is informed and believes, and on that basis alleges, that shortly before May 2025, Spirko retained McLendon as her counsel to represent her interests associated with her involvement in the Adams Proceedings.

37. Curiously, McLendon, a licensed Tennessee attorney, also had prior interactions with Pavlovich having taken her deposition twice in connection with prior, unrelated litigation in Tennessee.

38. Shortly after Spirko retained McLendon in connection with the Adams Proceedings, McLendon signed an affidavit in support of a motion to withdraw as Spirko's counsel in the Adams Proceedings, based upon a perceived conflict of interest given McLendon was working with Spirko to develop a podcast entitled "Trial and Error" which purported to disseminate the same content that was to be the subject matter of the Project and which would be disseminated by Spirko personally in audio-visual means directly in breach of the terms she agreed to by signing the Appearance Release Agreement.

39. Based on information and belief, Plaintiff alleges that McLendon and Spirko engaged in a calculated and conspiratorial effort to disseminate the subject matter of Dos Amicas' Project via "Trial and Error."

40. By at least May 15, 2025, both Spirko and McLendon had intimate

7

**COMPLAINT**

knowledge of Dos Amicas' production efforts and vision for the Project.

41.   Specifically, during a May 15, 2025 telephone conference between Dos Amicas, Spirko and McLendon, McLendon requested a copy of the Appearance Release Agreement Spirko signed with Dos Amicas and Spirko described the Project as being the "video documentary version" of what Spirko and McLendon were doing with the "Trial and Error" podcast.

42.   On May 16, 2025, after Dos Amicas became aware of Spirko's competing venture with McLendon, and confronted Spirko about her breach, interference and infringement relating to the Project, Spirko aggressively responded that she would "rip the [Appearance Release Agreement] apart or else," would no longer cooperate with production of the Project and encourage other participants to breach their respective Appearance Release Agreements.

43.   In that same May 16, 2025 discussion, Spirko took her threats further by asserting she would prevent other contributors to the Project, namely Adams family members Cindy and Doug Adams, who had also executed Appearance Release Agreements with Dos Amicas.

44.   Spirko also demanded that all Appearance Release Agreements associated with Dos Amicas' Project be voided, or she would have McLendon invalidate or otherwise challenge the enforceability of the agreements.

45.   More specifically, Spirko stated "[y]our contract is not valid anyway. There is no chance I will be honoring it"; and "[v]oid it now . . . or he (referring to McLendon) will challenge it legally and no one will work with you."

46.   Dos Amicas later discovered that Spirko, also on May 16, 2025, reserved the name "Dos Amicas LLC" with the California Secretary of State, as part of Defendants' effort to interfere with and interrupt Dos Amicas' business operations.

47.   Ultimately, on October 1, 2025, after launching "Trial and Error" which actively threatens the success of the Project which Spirko agreed to protect and cooperate with to her anticipated benefit, Spirko filed the complaint that initiated the

**COMPLAINT**

Tennessee Litigation through her attorney (and business partner), *McLendon*.

48. Spirko and McLendon together have also continued to appear publicly in various social media and podcast outlets to advance their competing podcast and seek to diminish the value of Dos Amicas' Project.

49. As recently as late April 2026, Spirko continues to breach her exclusivity agreement and engage in efforts to thwart Dos Amicas' intellectual property rights in the subject-matter of the Project by inducing other contractually obligated participants, namely Cindy Adams, by posting interviews with her on Facebook discussing the Adams Proceedings while promoting "Trial and Error."

50. Spirko also maintains a membership-based YouTube channel associated with "Trial and Error" where she appears to have interviewed Cindy Adams about the Adams Proceedings.

51. As alleged herein, and to more fully be elaborated and expanded upon during the ensuing discovery process in this Court, Plaintiff will establish a concerted, conspiratorial effort by Spirko and McLendon to breach the Appearance Release Agreement, actively interfere with Dos Amicas valid and copyright protected intellectual property in the development of the Project resulting in significant present and prospective damages to Dos Amicas to be proven at trial following party, percipient and expert discovery.

**FIRST CAUSE OF ACTION**
Breach of Written Contract
(Against Spirko and Does 1 through 10)

52. Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 51.

53. Spirko was well aware of the nature, necessity and purpose of the Appearance Release Agreement when she executed it on June 13, 2024.

54. Contrary to her allegation in the Tennessee Litigation, the Appearance Release Agreement was explained to Spirko, and she was made fully aware of its

**COMPLAINT**

utility and necessity and widespread use in the industry.

55. Spirko executed the Appearance Release Agreement in consideration of the benefit to be derived for herself (as well as McLendon) and Dos Amicas.

56. Dos Amicas performed all its obligations under the Appearance Release Agreement, has not breached any obligation thereunder, nor does Spirko assert it has in her Tennessee Litigation.

57. Spirko unabashedly advised Dos Amicas of her intention to breach the Appearance Release Agreement on multiple occasions and publicly did so by engaging in the "Trial and Error" podcast with McLendon, providing to her shared venture with McLendon precisely what she had agreed to provide to Dos Amicas.

58. Spirko's pirating of Dos Amicas' copyright protected intellectual property in direct and intentional contravention of the terms of the Appearance Release Agreement, has and will continue to cause significant damages to Dos Amicas by undercutting the Project before its release and preventing it from being first in time to creatively present the subject matter via release of the Project.

59. Accordingly, Plaintiff is entitled to direct and consequential damages from Spirko for her breach of the Appearance Release Agreement.

### SECOND CAUSE OF ACTION
Breach of the Implied Covenant of Good Faith and Fair Dealing
(Against Spirko and Does 1 through 10)

60. Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 59.

61. Implied into every California contract, including the Appearance Release Agreement, is the implied covenant of good faith and fair dealing.

62. The genesis and purpose of the Appearance Release Agreement was to benefit Dos Amicas *and* Spirko – as well as McLendon apparently pursuant to Spirko's own statements during her pre-breach participation in the Project.

63. However, Spirko by, among other things, pirating the information she

10

**COMPLAINT**

promised to provide to Dos Amicas for the Project and instead re-directing such information and her efforts toward developing "Trial and Error" with McLendon, acted unreasonably and without proper cause and stripped Dos Amicas of the right to its benefit of the parties' bargain.

64.    As a result of Spirko's outright, unreasonable breach of the Appearance Release Agreement, Dos Amicas is entitled to direct and consequential damages to be proven at trial.

### THIRD CAUSE OF ACTION
Intentionally Inducing Breach of Contract
(Against All Defendants)

65.    Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 64.

66.    As alleged above, Dos Amicas has a valid and enforceable Appearance Release Agreement with Spirko, as well as other contributors to the Project, including Doug and Cindy Adams.

67.    Based on information and belief, McLendon and Spirko have engaged in a calculated effort to prevent Dos Amicas from producing the Project and/or seeking to diminish any value to Dos Amicas by launching "Trial and Error."

68.    McLendon, as Spirko's partner in "Trial and Error," has formally represented her as counsel in efforts to invalidate the Appearance Release Agreement in Tennessee.

69.    McLendon has also appeared with Spirko in social media posts threatening to damage Dos Amicas' interest in the benefit of their intellectual property rights in the Project.

70.    Further, beginning in or around May 2025, Spirko threatened Dos Amicas that she would prevent other participants with whom Dos Amicas had signed appearance agreements, namely Cindy and Doug Adams, from participating or otherwise cooperating with Dos Amicas in production of the Project.

11

**COMPLAINT**

71.    As recently as late last month, Spirko appeared on Facebook with Cindy Adams openly discussing the Adams Proceedings in conjunction with promoting "Trial and Error," not the Project, contrary to the terms of not only her Appearance Release Agreement, but also Ms. Adams' similar agreement.

72.    Spirko's and McLendon's respective conduct as alleged herein, and to be proven at trial, has resulted in Spirko as well as other contributors breaching their respective agreements with Dos Amicas.

73.    Such conduct and resulting breaches of Dos Amicas' valid and enforceable Appearance Release Agreements has damaged Dos Amicas by diminishing the value of the Project and hamstringing its efforts to the use its intellectual property for financial benefit by being first to the market, which was the overarching and agreed to intention behind the Appearance Release Agreements.

74.    Accordingly, Plaintiff is entitled to direct and consequential damages from all Defendants arising from Spirko's and others' breaches.

### FOURTH CAUSE OF ACTION
Intentional Interference with Prospective Economic Advantage
(Against All Defendants)

75.    Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 74.

76.    Plaintiff stands to gain an economic advantage in the entertainment marketplace, specifically within the budding and popular "true crime" genre, by lending its expertise, including that of its principals, Pavlovich and Alexandrova, to the subject-matter of the Project and its ultimate production and marketing.

77.    Key to the success of Dos Amicas' efforts in that regard is the protection of its intellectual property in the subject-matter of the Project, which is secured, in part, by the Appearance Release Agreement, and other similar agreements with third-parties.

78.    Defendants are aware of Spirko's agreement and relationship with Dos

**COMPLAINT**

Amicas as it pertains to the Project, as well as Dos Amicas' relationships with other contributors to the Project, and the relevant industry as a whole, which are necessary for the ultimate success and value of the Project.

79. Defendants have expressed and acted upon their intent to interfere with Dos Amicas' production of the Project by, among other things, (1) releasing information pertaining to the same subject matter via "Trial and Error" before production of the Project is complete, (2) actively attempting to steer contributors away from cooperating with Dos Amicas, (3) stifle Dos Amicas' opportunities to market and pitch the Project to prospective streamers, distributors, production partners, financiers, buyers, sales agents, and other entertainment industry contacts, (4) initiating litigation in inappropriate forums to stifle production of the Project and (5) engaging in public campaigns to disseminate key information to which Dos Amicas has intellectual property and contractual rights to control in the creative space.

80. Based on information and belief, Plaintiff alleges Defendants have engaged in such efforts to bolster and secure their own financial benefit without having to share profits with Dos Amicas by eliminating Dos Amicas' opportunity to independently benefit from the subject-matter of the Project.

81. Defendants' shared efforts to damage the Project and Dos Amicas' interest in the Project have been malicious and intentional as evidenced, in part and by way of example, by Spirko's effort to register an entity under the name "Dos Amicas, LLC" in California after stating to Pavlovich in a heated exchange "You don't even have a business."

82. As a result of such efforts, Dos Amicas relationships with key contributors to the Project including, but not limited to Spirko, have been damaged to the point that Dos Amicas is losing the ability to gainfully market and produce the Project.

83. Without such active and continuing interference by Defendants, Dos Amicas would be able to produce the Project with the protection of the legal

mechanisms in place to secure the propriety and dissemination of the subject-matter, thereby increasing the benefit of the production efforts for Dos Amicas.

84.    Dos Amicas has suffered harm and consequential damages as the result of Defendants' interference with the Project because the subject-matter and content of the same is being pirated and marketed elsewhere by those under contract with Dos Amicas who are obligated to protect the dissemination of such information by Dos Amicas in the format it chooses for production of the same.

85.    As a result, Plaintiff is entitled to consequential damages, according to proof, as well as punitive and exemplary damages pursuant to California Civil Code Section 3294 given Defendants actions are and have been oppressive, fraudulent and malicious as alleged herein.

**FIFTH CAUSE OF ACTION**
Copyright Infringement – 17 U.S.C. § 501, *et seq.*
(Against All Defendants)

86.    Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 85.

87.    Plaintiff, as the producer of the Project, through the anticipated and presently-in-development artistic manner in which the Project is contemplated by Plaintiff, possesses a copyright for some or all of the Project's ultimate expression.

88.    Plaintiff's ownership rights in this regard are supported, as between Plaintiff and Defendant Spirko, by the terms of the Appearance Release Agreement which, in pertinent part, provides that the "Materials" and the "Production" are Dos Amicas' "sole and absolute property with the right, throughout the world, including under copyright."

89.    Further, Plaintiff has filed for copyright protection with the United States Copyright Office by uploading and registering a "sizzle reel" and treatment associated with the Project, as well as original footage/materials, creative selection, arrangement, among other protected forms of expression associated with the Project.

14

**COMPLAINT**

90.    Defendant's use and manner of use of the anticipated content of the Project, based on intimate knowledge of the manner in which Dos Amicas intended to present the same, infringed upon and continues to infringe upon Dos Amicas' valid copyright, without exception.

91.    As a result, Plaintiff has and will continue to suffer damages because of Defendants' infringement in the form of actual and consequential damages to be proven at trial.

92.    Accordingly, Plaintiff is also entitled to injunctive relief against Defendants to prevent future infringement.

93.    Plaintiff also seeks statutory damages for Defendants' infringement, as appropriate.

## SIXTH CAUSE OF ACTION
Civil Conspiracy
(Against All Defendants)

94.    Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 93.

95.    As alleged above, Spirko and McLendon, and some or all of the Doe Defendants, agreed to engage in a common plan and design to negatively impact the Project and Dos Amicas legal rights and benefits arising from the Project for their own shared benefit.

96.    To that end, as alleged above, Defendants, among other actions, (1) released information pertaining to the same subject matter via "Trial and Error" before production of the Project was complete, (2) actively seek to steer contributors away from cooperating with Dos Amicas, (3) initiated litigation in inappropriate forums to stifle production of the Project and (4) are actively engaged in public campaigns to disseminate key information to which Dos Amicas has intellectual property and contractual rights to control in the creative space.

97.    By virtue of Defendants' conspiracy to harm Plaintiff, Plaintiff has

15

**COMPLAINT**

Case 2:26-cv-04915   Document 1   Filed 05/06/26   Page 16 of 29   Page ID #:16

suffered damages in the manner alleged in this Complaint.

98.   Accordingly, each Defendant is liable for the actions of the other and vice versa given Defendants were acting in a conspiratorial and in conjunction to cause such harm to Plaintiff.

## **PRAYER FOR RELIEF**

As a result of Defendants' conduct as alleged in this Complaint, Plaintiff seeks the following damages in connection with its causes of action against Defendants:

1.   Direct and consequential damages as the result of Spirko's breach of contract;

2.   Direct and consequential damages as the result of Spirko's breach of the covenant of good faith and fair dealing;

3.   Consequential damages, according to proof, against all Defendants under each cause of action resulting from Defendants' efforts to interfere with Plaintiffs' rights and benefits to be obtained through production of the Project;

4.   Consequential damages in the form of lost profits and future lost profits resulting from Defendants' efforts to interfere with Plaintiffs' rights and benefits to be obtained through production of the Project;

5.   Statutory damages pursuant to 17 U.S.C. § 504, *et seq.*, as appropriate;

6.   Injunctive relief pursuant to 17 U.S.C. § 502, *et seq.* and common law principles;

7.   Attorneys' fees incurred and paid as the result of the necessity of bringing this action;

8.   Costs of suit incurred and paid by Plaintiff in connection with bringing this action;

9.   Punitive damages pursuant to California Civil Code § 3294, *et seq.*; and

///

///

///

16

**COMPLAINT**

10.    Whatever other relief the Court deems necessary and proper.

Dated:  May 6, 2026                    **THE LAW OFFICE OF MICHAEL DAVID DOUGLAS (MDDLegal)**

By: /s/    *Michael David Douglas*
Michael David Douglas, Esq.
Attorney for Plaintiff DOS
AMICAS LLC

17

**COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff DOS AMICAS LLC demands a jury trial on each and every claim, issue and cause of action alleged in this Complaint.


Dated:  May 6, 2026                    **THE LAW OFFICE OF MICHAEL DAVID DOUGLAS (MDDLegal)**

                                       By:  /s/   *Michael David Douglas*
                                             Michael David Douglas, Esq.
                                             Attorney for Plaintiff DOS
                                             AMICAS LLC

18

**COMPLAINT**

# EXHIBIT A

## APPEARANCE RELEASE ("RELEASE")

For good and valuable consideration, the receipt and sufficiency of which is acknowledged, I hereby grant **DOSAMICAS LLC**, its parents, affiliates, subsidiaries, designees, employees, representatives, licensees, successors and assigns (collectively, "**Producer**") the absolute and irrevocable right and permission (but not the obligation) to photograph, film, videotape, record, reproduce, portray and/or otherwise exploit my name, voice, conversations, sounds, persona, appearance, signature, photograph, portrayal, mannerisms, personal characteristics, biographical material, image and/or likeness, as well as any and all musical compositions/performances, stories, statements or actions made by me, whether written, spoken, sung, or otherwise uttered or expressed by me, information given and/or materials provided by me, including without limitation any personal medical and/or health information, (all of the foregoing, collectively referred to hereinafter as the "**Material**") in and in connection with the production currently entitled **"THE ZACHARY AND DYLAN ADAMS STORY."**

All rights in and to the Materials and the Production, including negatives, outtakes, sounds, and the images contained therein shall be Producer's sole and absolute property with the right, throughout the world, including under copyright, to use and to license others to use, all or any portion of the Materials, in any manner and in any and all media of any kind, now known or hereafter devised, in or in connection with the Production or in any other production, and in advertising and promotion thereof, or of the Producer, in perpetuity. Such rights include, but are not limited to, the right to use, incorporate, broadcast, telecast, exhibit, distribute, re-use, publish, re-publish, alter, edit, delete, juxtapose the Materials with any other materials, change the sequence of events or questions posed and/or answers I give, dub (in Producer's sole discretion), or make any other changes to the Material, in whole or in part, alone or in conjunction with other material in and in connection with the Production or otherwise.

I agree to be available to render on-camera services when and where reasonably requested by Producer during the production period. For clarification, except as expressly set forth herein, no compensation shall be payable to me or to any third parties in connection with this Release. To the extent that I receive anything of value in connection with the Production, including but not limited to goods and services, I shall be responsible for all taxes and other obligations that are or may become due from me.

I represent and warrant that any statements made by me to Producer, or in connection with the Materials and Production, are true and will not violate or infringe upon any third party's rights.

I acknowledge that Producer will rely on the permissions granted herein, at substantial cost to them, and I agree not to assert any claim of any nature whatsoever (including claims for injunctive relief or money damages, all of which I hereby knowingly waive) against anyone relating to the exercise of this permission or to the use of the Materials by Producer. I agree to irrevocably release, indemnify and hold harmless Producer from any and all claims, demands, costs (including outside attorney's fees) and causes of action of any kind or nature whatsoever now and in the future, including without limitation defamation, bodily harm, emotional distress, invasion of privacy, and right of publicity, arising out of or in connection with my appearance, statements or actions in or in connection with the Materials, Production, any related advertising and promotion, or any of the uses described herein. In such regard, I expressly waive any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

In signing this Release, I am not relying on any representations or other statements that are not contained herein. I understand and acknowledge that I will not be able to revoke my permission after I have signed this Release nor will I have any right to restrain, enjoin, restrict or interfere with the production, distribution, exhibition and exploitation of the Production or any related advertising or promotion or any use of the Materials, or to seek to do any of the foregoing. I agree that I shall have no right to review or approve the Production or any related advertising or promotion or any use of the Materials.

Except as requested and/or permitted by Producer in writing in each instance, I agree that: (i) I shall not participate in, or cooperate in any manner with, any other project or work in any media (including, without limitation, audiovisual and/or audio-only works) that is about the same or similar subject matter as the Production from the date hereof until the date that is one (1) year following the initial commercial release of the Production and (ii) I shall not issue (nor shall anyone issue on my behalf) any press releases or other public statements, or speak to the press about the Production, my involvement in the Production, or Producer. I shall keep confidential any and all information I may learn, or be made aware of, related to the Production or Producer. This Release shall be governed by and construed in accordance with the laws of the State of California applicable to agreements made entirely therein and the parties hereto agree to submit to jurisdiction in the State of California in the City and County of Los Angeles. This Release sets forth the entire agreement between myself and Producer and may not be altered or amended except in writing signed by both parties. This Release may be executed and delivered by facsimile or other electronic transmission and/or by PDF signature.

I have read this Release prior to signing it and understand its contents.

(Print) Name: Katie Spirko     Signature: _Katie Spirko_ Date: 6/13/24

Address: 2200 21st Ave, South,     Telephone: 402-680-4229
suite 401, Nashville TN
37212

# EXHIBIT B

**E-FILED**
**10/1/2025 6:13 PM**
**CLERK & MASTER**
**DAVIDSON CO. CHANCERY CT.**

IN THE CHANCERY COURT OF
DAVIDSON COUNTY, TENNESSEE

KATIE O. SPIRKO

v.

DOSAMICAS LLC, IRENA
ALEXANDROVA, NATASHA PAVLOVICH

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

1. Plaintiff Katie Spirko ("Dr. Spirko"[1]) is an adult resident of Davidson County, Tennessee.

2. Defendant Dosamicas, LLC ("Dosamicas") is, upon information and belief, a Nevada limited liability company owned by the individual defendants, Irena Alexandrova ("Alexandrova") and Natasha Pavlovich ("Pavlovich"). Dosamicas purportedly has a place of business and purportedly does business in California, but it does not appear to be registered to do business in Calfornia as a foreign LLC.

3. Alexandrova is upon information and belief a resident of California.

4. Pavlovich is upon information and belief a resident of Illinois. Pavlovich has previously been a resident of Tennessee and has had extensive contact with Tennessee, including extensive history in litigation in the courts of middle Tennessee.

5. This Court has subject matter jurisdiction under Tenn. Code Ann. § 16-11-102, including equitable jurisdiction, and pursuant to Tenn. Code Ann. § 29-14-103 (Declaratory Judgment Act).

6. Venue is proper in Davidson County because Dr. Spirko resides here, the purported "Release" was executed in Tennessee, and enforcement of the Release as against Dr. Spirko in Davidson County would substantially affect Dr. Spirko's rights in this venue and jurisdiction, and others.

7. In 2023, Dr. Spirko became involved as a consulting expert witness and potentially a testifying expert witness in a post-conviction criminal case, *State v. Zach Adams*. Zach Adams was convicted in 2017 of the high profile kidnap and rape of Holly Bobo, and his post conviction relief petition is pending in Hardin County, Tennessee. Shortly after Zach Adams' conviction, his younger brother Dylan Adams entered an *Alford* plea. Both men remain in prison.

8. Zach Adams' counsel engaged Dr. Spirko for various services in connection with that case. As part of her work on that case, Dr. Spirko has become deeply invested in the advocacy for Zach

---

[1] Katie Spirko is a practicing and licensed psychologist who has testified as an expert witness in many local courts and will be referred to herein as "Dr. Spirko."

Adams, and has appeared in podcasts and documentary video programs as an advocate for Zach Adams. Dr. Spirko has become a trusted resource for Zach Adams and Zach's family, including his mother, Cindy, and his grandfather, Dick.

9. By 2023, Dr. Spirko, Alexandrova, and Pavlovich had become acquainted with one another. Dr. Spirko had previously been involved in other litigation involving Pavlovich. Pavlovich and Alexandrova were previously acquainted, and Pavlovich introduced Dr. Spirko to Alexandrova.

10. While the three were together after Dr. Spirko had become involved in *State v. Zach Adams*, the topic of her involvement came up among Dr. Spirko, Pavlovich, and Alexandrova.

11. Dr. Spirko, as part of her work with and on behalf of Zach Adams has sought to raise awareness of the case in many media forms, including podcasts and video documentary programs. To that end, Dr. Spirko had explicitly informed Pavlovich that Dr. Spirko would not sign anything that limited her ability to advocate for Zach Adams in media or otherwise.

12. Pavlovich mentioned to Dr. Spirko the possibility of creating a project involving the *State v. Zach Adams* story. Dr. Spirko, always seeking avenues to advocate for Zach and Dylan, was receptive to the idea of Pavlovich and/or Alexandrova creating a project on the subject.

13. In or about June 2024, Dr. Spirko was scheduled to attend court in the *State v. Zach Adams* case in Savannah, Tennessee. Dr. Spirko told Pavlovich, who suggested that she could arrange a film crew to tag along and create some content of the day. Pavlovich did arrange for, as best Dr. Spirko can remember, two men to accompany Dr. Spirko on that day.

14. On or about 16 June 2024, defendants' agent, the cameraman, presented Dr. Spirko with a document entitled "Appearance Release" (the "Release"). A true and correct copy is attached as Exhibit 1.

15. Without any advance notice or discussion, one of the men in the "film crew" presented Dr. Spirko what he called a "release" before he began filming. Dr. Spirko understood the "release" was to permit the recording to be used by her permission. The Release was presented as merely a release to record Dr. Spirko. At no point did Dr. Spirko and the defendants (or their agents) discuss, negotiate, or even contemplate any kind of "exclusivity" or covenant not to compete by Dr. Spirko. Indeed, Dr. Spirko had previously informed defendants she could not and would not limit her ability to advocate for Zach and Dylan.

16. The Release purports to grant Defendant sweeping, perpetual rights over Plaintiff's name, likeness, image, voice, persona, biographical material, and personal statements.

17. The Release requires Dr. Spirko to indemnify Dosamicas, waives all potential claims (including unknown future claims), imposes confidentiality obligations, restricts remedies, bars the courthouse to Dr. Spirko, and contains a one-year non-compete provision that doesn't even begin until a date that Dr. Spirko can neither trigger nor even influence.

18. The Release states that Dr. Spirko will receive no compensation, and Dr. Spirko in fact has received nothing of value in exchange for signing it, and according to the Release will never get anything of value in exchange for the onerous obligations and constraints imposed upon her.

19. The Release purports to require Dr. Spirko to do additional, on-camera work for an indefinite period of time, with no boundaries on reasonableness as to time, place, personal expense, or otherwise.

20. Dr. Spirko did not negotiate, and did not have the opportunity to negotiate, the terms of the Release. It was presented on a take-it-or-leave-it basis.

21. The defendants have not, to Dr. Spirko's knowledge, done any further work or made any further progress on a project involving the subject matter since the one day a camera crew tagged along with Dr. Spirko. Even then, during that day, the camera crew recorded little or nothing about the subject matter of Zach and Dylan. Instead, the same cameraman, upon information and belief, also solicited and received substantially identical "releases" from Cindy Adams and Dick Adams, ostensibly burdening them the same as defendants claim to have contractual rights vis a vis Dr. Spirko.

22. Since the June 2024 date, Dr. Spirko has continued to publicly advocate for Zach and Dylan Adams, including by participating as co-host of *The Trial and Error Podcast*. Defendants have had actual knowledge of the publication of the podcast since it was first published in early March 2025. At no time, before late September 2025, did the defendants protest Dr. Spirko's public participation in any project related to the subject matter.

23. When point blank asked what the status of the project was more than a year after the Release was signed, the defendants, instead of providing a good faith and substantive reply, merely issued demands for capitulation to the "exclusivity" purportedly created in the Release. See Exhibit 2. Upon information and belief, there is no "project," the defendants have neither the ability nor the interest in pursuing the project, and defendants are merely trying to hold Dr. Spirko hostage to an unconscionable, unenforceable contract in bad faith.

24. The Release is one-sided, unconscionable, burdensome, and lacks consideration, and is therefore unenforceable and should be vitiated.

25. An actual controversy exists regarding the validity and enforceability of the Release, as demonstrated in the recent correspondence between the undersigned counsel and the defendants, which is attached as Exhibit 2.

26. Under Tenn. Code Ann. § 29-14-103 and the law of California, Plaintiff is entitled to a declaration that the Release is unenforceable.

27. Under Tennessee law and California law, the Release is unenforceable for lack of consideration.

28. The Release was a contract of adhesion presented without negotiation, and is unenforceable as an unconscionable purported contract.

29. The Release contains substantively unconscionable terms, including perpetual waivers of rights, indemnification, non-compete, and waiver of rights and privileges without consideration under the law of Tennessee and California.

30. The Release purports to waive fundamental rights of publicity, privacy, and statutory protections under both Tennessee and California law, rendering the Release unenforceable.

3 of 4

31. Waiver of all future unknown claims, bodily injury, and emotional distress claims contravenes Tennessee and California public policy.

32. The Release is not perfectly fair, equal, and just in its terms and circumstances and is unenforceable under California law.

33. The Release is unenforceable under Tennessee law for reasons of fraud, mistake, duress, and undue influence by defendants upon Dr. Spirko.

34. The contract is ambiguous and unclear to the extent it is unenforceable under the law of California and Tennessee.

35. The Release bars Plaintiff from participating in any similar projects for one year following the Production's release, a date completely out of the control or even the influence of Dr. Spirko, and too ambiguous to be enforceable. This provision, by itself, is unconscionable and unenforceable.

36. As a noncompete contract, even if the balance of the document is enforceable, the length and terms of the noncompete are unenforceable altogether; alternatively the terms should be subject to a "blue pencil" to conform the terms to the law of Tennessee and/or California, including by releasing Dr. Spirko from any term of "exclusivity" with the defendants.

37. The Release grants Defendant unlimited rights to Plaintiff's likeness in perpetuity, while imposing no reciprocal obligations on Defendant, an unconscionable and unenforceable provision under the law of either Tennessee or California.

38. Defendants come before this court with unclean hands and should be estopped from attempting to enforce the Release.

Plaintiff respectfully requests that this Court:

1. Declare the Release invalid, void, voidable, and/or unenforceable;

2. Permanently enjoin Defendants from seeking to enforce the Release against Dr. Spirko;

3. Award Dr. Spirko costs of this action; and

4. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Dana C. McLendon III*
Dana Crosland McLendon III (#016214)
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com

4 of 4

## APPEARANCE RELEASE ("RELEASE")

For good and valuable consideration, the receipt and sufficiency of which is acknowledged, I hereby grant **DOSAMICAS LLC**, its parents, affiliates, subsidiaries, designees, employees, representatives, licensees, successors and assigns (collectively, "**Producer**") the absolute and irrevocable right and permission (but not the obligation) to photograph, film, videotape, record, reproduce, portray and/or otherwise exploit my name, voice, conversations, sounds, persona, appearance, signature, photograph, portrayal, mannerisms, personal characteristics, biographical material, image and/or likeness, as well as any and all musical compositions/performances, stories, statements or actions made by me, whether written, spoken, sung, or otherwise uttered or expressed by me, information given and/or materials provided by me, including without limitation any personal medical and/or health information, (all of the foregoing, collectively referred to hereinafter as the "**Material**") in and in connection with the production currently entitled "**THE ZACHARY AND DYLAN ADAMS STORY.**"

All rights in and to the Materials and the Production, including negatives, outtakes, sounds, and the images contained therein shall be Producer's sole and absolute property with the right, throughout the world, including under copyright, to use and to license others to use, all or any portion of the Materials, in any manner and in any and all media of any kind, now known or hereafter devised, in or in connection with the Production or in any other production, and in advertising and promotion thereof, or of the Producer, in perpetuity. Such rights include, but are not limited to, the right to use, incorporate, broadcast, telecast, exhibit, distribute, re-use, publish, re-publish, alter, edit, delete, juxtapose the Materials with any other materials, change the sequence of events or questions posed and/or answers I give, dub (in Producer's sole discretion), or make any other changes to the Material, in whole or in part, alone or in conjunction with other material in and in connection with the Production or otherwise.

I agree to be available to render on-camera services when and where reasonably requested by Producer during the production period. For clarification, except as expressly set forth herein, no compensation shall be payable to me or to any third parties in connection with this Release. To the extent that I receive anything of value in connection with the Production, including but not limited to goods and services, I shall be responsible for all taxes and other obligations that are or may become due from me.

I represent and warrant that any statements made by me to Producer, or in connection with the Materials and Production, are true and will not violate or infringe upon any third party's rights.

I acknowledge that Producer will rely on the permissions granted herein, at substantial cost to them, and I agree not to assert any claim of any nature whatsoever (including claims for injunctive relief or money damages, all of which I hereby knowingly waive) against anyone relating to the exercise of this permission or to the use of the Materials by Producer. I agree to irrevocably release, indemnify and hold harmless Producer from any and all claims, demands, costs (including outside attorney's fees) and causes of action of any kind or nature whatsoever now and in the future, including without limitation defamation, bodily harm, emotional distress, invasion of privacy, and right of publicity, arising out of or in connection with my appearance, statements or actions in or in connection with the Materials, Production, any related advertising and promotion, or any of the uses described herein. In such regard, I expressly waive any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

In signing this Release, I am not relying on any representations or other statements that are not contained herein. I understand and acknowledge that I will not be able to revoke my permission after I have signed this Release nor will I have any right to restrain, enjoin, restrict or interfere with the production, distribution, exhibition and exploitation of the Production or any related advertising or promotion or any use of the Materials, or to seek to do any of the foregoing. I agree that I shall have no right to review or approve the Production or any related advertising or promotion or any use of the Materials.

Except as requested and/or permitted by Producer in writing in each instance, I agree that: (i) I shall not participate in, or cooperate in any manner with, any other project or work in any media (including, without limitation, audiovisual and/or audio-only works) that is about the same or similar subject matter as the Production from the date hereof until the date that is one (1) year following the initial commercial release of the Production and (ii) I shall not issue (nor shall anyone issue on my behalf) any press releases or other public statements, or speak to the press about the Production, my involvement in the Production, or Producer. I shall keep confidential any and all information I may learn, or be made aware of, related to the Production or Producer. This Release shall be governed by and construed in accordance with the laws of the State of California applicable to agreements made entirely therein and the parties hereto agree to submit to jurisdiction in the State of California in the City and County of Los Angeles. This Release sets forth the entire agreement between myself and Producer and may not be altered or amended except in writing signed by both parties. This Release may be executed and delivered by facsimile or other electronic transmission and/or by PDF signature.

I have read this Release prior to signing it and understand its contents.

(Print) Name: _Katie Spirko_    Signature: _Katie Spirko_    Date: _6/13/24_

Address: _2200 21st Ave, South, Suite 401, Nashville TN 37212_    Telephone: _402-680-4229_

Exhibit 1

1:15

<    **AC**   **Andy Clapton**



# Andy Clapton >

&? <u>Profile names</u> are not verified

  Member of Dana Natasha Katie

**Fri, Sep 12**

You set disappearing message time to 5 minutes.

You disabled disappearing messages.

Natasha, four months ago you reported to us that you were on the cusp of a deal with Netflix. We haven't heard anything since then. What is the status of that project?

10:15 AM

# Exhibit 2

+   Message

1:20

**Dana Natasha Katie**

# Dana Natasha Katie

Andy Clapton, Katie Spirko, and you

Fri, May 16

Katie Spirko added you to the group.

**Katie Spirko**
Dana, I have notified Natasha and Irena that until further notice, neither have my permission to represent themselves as working with my willing participation, cooperation, or collaboration on any projects. I will defer to you fully moving forward on any further contact or communication.

1:22 PM

Fri, Sep 12

Natasha, four months ago you reported to us that you were on the cusp of a deal with Netflix. We haven't heard anything since then. What is the status of that project?

9:45 AM

Message



**September 22, 2025**

Via Email To:
Mr. Dana McLendon / dana@danamclendonlaw.com
Dr. Katie Spirko / katie.spirko@facts.care

Re: Project *The Zachary and Dylan Adams Story*

Dear Mr. McLendon and Dr. Spirko,

This letter responds to your recent communications regarding the Project.

As you know, Dr. Spirko signed a binding release agreement with DOSAMICAS, LLC. That agreement grants the Company exclusive rights to her participation and includes confidentiality and exclusivity provisions.

Any attempt to participate in a competing podcast or production on the same subject **constitutes a material breach** and exposes all parties involved to liability.

We require confirmation by **October 1, 2025** that the agreement will be honored. Please also clarify in writing whether you are contacting the Company as Dr. Spirko's attorney of record or in a personal/podcast capacity.

The Company reserves all rights and remedies for any breach or interference with these agreements.

Sincerely,
Irena Alexandrova
Managing Member
DOSAMICAS, LLC

Dosamicas, LLC    |    4500 Park Granada Suite #202D    |    Calabasas, Ca. 91302
Email: irena@dosamicas.com | www.dosamicas.com