**THE LAW OFFICE OF MICHAEL DAVID DOUGLAS (MDD Legal)**
Michael David Douglas, Esq. (SBN 265210)
mdouglas@mddlegal.com
606 Venice Blvd. #318
Venice, CA 90291
Telephone: (760) 815-3453

Attorney for Plaintiff,
DOS AMICAS LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOS AMICAS LLC, a Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>KATIE OSBORN SPIRKO, an individual; DANA CROSLAND MCLENDON, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | **Case No: 2:26-cv-04915-DSF-SSC**<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:**<br><br>(1) **Declaratory Relief;**<br>(2) **Breach of Contract;**<br>(3) **Breach of the Implied Covenant of Good Faith and Fair Dealing; and**<br>(4) **Intentional Interference with Contractual Relations** |

Pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(1)(B), Plaintiff DOS AMICAS LLC ("Plaintiff' or "Dos Amicas") files this First Amended Complaint ("FAC") against Defendants KATIE OSBORN SPIRKO, DANA CROSLAND MCLENDON, and DOES 1 through 10, inclusive, and alleges as follows:

## THE PARTIES, JURISDICTION & VENUE

1. Plaintiff, Dos Amicas, is a Nevada Limited Liability Company with its principal place of business in Los Angeles County, California doing business as an out-of-state LLC in California based on recent registration with the California

1

Secretary of State.

2. The only two members of Dos Amicas are Natasha Pavlovich ("Pavlovich"), who is domiciled in Illinois, and Irena Alexandrova ("Alexandrova"), who is domiciled in Los Angeles County, California.

3. Dos Amicas manages its California production operations from a dedicated office maintained by Irena Alexandrova in Los Angeles County, California.

4. Dos Amicas does not lease separate commercial office space in California. However, Plaintiff's footage, storyboards, production records, business banking, editing equipment, film-camera and sound packages, editorial relationships, producer contacts, and production-company relationships are maintained, managed, secured, or coordinated through Los Angeles.

5. Defendant Katie Osborn Spirko, PsyD, HSP ("Spirko") is a Forensic & Clinical Neuropsychologist who, based on information and belief, is domiciled in and does business in Nashville, Tennessee.

6. Defendant Dana Crosland McLendon ("McLendon") is an attorney licensed to practice law in the State of Tennessee pursuant to Tennessee "BPR Number" 016214 who, based on information and belief, is domiciled in and conducts business in Franklin, Tennessee.

7. Defendants designated in this Complaint as DOES 1 through 10 inclusive are entities and individuals whose names Plaintiff is currently unaware of, and Plaintiff therefore sues these Doe Defendants by such fictitious names. After discovery, which is necessary to ascertain these Doe Defendants' true names and capacities, Plaintiff will amend its Complaint to allege the necessary identifying details.

8. At this time, Plaintiff alleges that DOES 1 through 10 inclusive, each bear responsibility for the allegations and damages alleged by Plaintiff in this Complaint, either as independent actors, agents, employees and/or co-conspirators with the Spirko and McLendon, had full knowledge of and gave substantial assistance to the alleged activities, and by virtue of such knowledge and engaging in such actions is legally

**FIRST AMENDED COMPLAINT**

responsible for the acts and omissions of the Spirko and McLendon as well as each other.

9. Among the potential Doe defendants is an entity which, based on information and belief, may have been formed by Spirko and/or McLendon to own and operate the podcast entitled "Trial & Error," which is discussed further below. Although the name of this entity, if any, remains unknown to Plaintiff, Plaintiff alleges that on or around May 16, 2025, Spirko reserved the name "Dos Amicas LLC" with the California Secretary of State. Plaintiff's investigation into the managerial organization of the "Trial & Error" podcast is continuing and Plaintiff intends to conduct discovery in this action to obtain such information, if necessary.

10. This Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1332 given complete diversity of citizenship exists between Plaintiff and all Defendants and the amount in controversy (as alleged in further detail below) exceeds $75,000.00.

11. On June 13, 2024, Spirko signed an agreement with Dos Amicas entitled Appearance Release ("Release") (the "Appearance Release Agreement") which, in pertinent part, provided "[t]his Release shall be governed by and construed in accordance with the laws of the State of California applicable to agreements made entirely therein and the parties hereto agree to submit to jurisdiction in the State of California in the City and County of Los Angeles." *See* **Exhibit A – Appearance Release ("Release").**[1]

12. Based on Ms. Spirko's agreement to the Forum Selection Clause in the Appearance Release Agreement, she has consented to jurisdiction in this forum. *See e.g., SEC v. Ross,* 504 F.3d 1130, 1149 (9th Cir.2007).

13. This Court has specific personal jurisdiction over McLendon because he

---

[1] Although the Appearance Release Agreement contains confidentiality provisions, Spirko has waived the right to enforce such provisions by first filing a copy of the Appearance Release Agreement in the incorrect Tennessee forum without Dos Amicas' consent.

**FIRST AMENDED COMPLAINT**

purposefully directed commercial activity toward Plaintiff's California-managed production operations, as alleged further below.

14. Venue is appropriate in this District given the Appearance Release Agreement provides "the parties hereto agree to submit to jurisdiction in the State of California in the City and County of Los Angeles." *See* **Exhibit A**.

## PRIOR PROCEDURAL HISTORY

15. Plaintiff filed the original Complaint in this action on May 6, 2026.

16. Spirko was served with the Complaint on May 23, 2026.

17. While Plaintiff remained in the process of attempting to serve the Complaint on McLendon, on June 14, 2026, Plaintiff and Spirko stipulated to continue the deadline for Spirko to respond to the Complaint until June 29, 2026.

18. McLendon was served with the Complaint on June 24, 2026.

19. On June 29, 2026, Plaintiff and Spirko executed and filed a second stipulation to continue the deadline for Spirko to respond to the Complaint until July 15, 2026.

20. On July 15, 2026, McLendon, through counsel, filed separate motions to (1) dismiss the Complaint pursuant to Rule 12(b)(1), (2) dismiss the Complaint pursuant to Rule 12(b)(2), (3) dismiss the Complaint pursuant to Rule 12(b)(6) and (4) specially strike the Complaint pursuant to California Code of Civil Procedure Section 425.16 (Anti-SLAPP).

21. The hearing on McLendon's motions in response to the Complaint was scheduled for August 17, 2026.

22. On July 21, 2026, Spirko filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6) and sought to join the motions filed by McLendon on July 15, 2026.

23. Prior to her July 21, 2026 filings, Spirko did not request a further extension of time to respond to the Complaint from Plaintiff, nor obtain an order from the Court to extend the previously agreed-upon July 15, 2026 response deadline.

4

**FIRST AMENDED COMPLAINT**

24. On July 27, 2026, Plaintiff informed the Court of emergency circumstances, some of which were unforeseen, involving Plaintiff's counsel which necessitated a continuance of the August 17, 2026 hearing date to allow Plaintiff additional time to respond to the various motions filed in response to the Complaint.

25. On July 27, 2026, the Court advised the parties that the August 17, 2026 hearing date and all deadlines flowing from that hearing date would be continued until August 31, 2026.

**THE TENNESSEE ACTION**

26. On October 1, 2025, Spirko filed an action in the Chancery Court of Davidson County, Tennessee captioned *Spirko v. Dos Amicas LLC, et al.* Davidson County, Tennessee at Nashville, Tennessee, Case No. 25-1383-III (the "Tennessee Litigation"). A copy of the Complaint filed in the Tennessee Litigation is attached to this Complaint as **Exhibit B**.

27. Via the Tennessee Litigation, Spirko seeks declaratory relief that the Appearance Release Agreement is "invalid, void, voidable, and/or unenforceable" and seeks injunctive relief preventing Dos Amicas from enforcing the Appearance Release Agreement against Spirko.

28. Spirko was previously represented by McLendon in the Tennessee Litigation until McLendon withdrew from such representation on May 28, 2026[2] based, in part, on the filing of this lawsuit. A copy of McLendon's Motion to Withdraw as Counsel and to Continue Hearing Set for May 29, 2026 is attached to this FAC as **Exhibit C**.

29. Dos Amicas, through counsel of record, and by way of special appearance without acquiescing to jurisdiction in Tennessee, responded to the Complaint filed in the Tennessee Litigation with a Motion to Quash Service of Process, Deny a Request for Default Judgment as a result of ineffective service, and to Dismiss the Tennessee

---

[2] As noted in Paragraph 18 above, McLendon was not served, despite Plaintiff's best efforts, until June 24, 2026.

5

**FIRST AMENDED COMPLAINT**

Litigation based on lack of personal jurisdiction over Dos Amicas in Tennessee and the forum selection clause for the City and County of Los Angeles as specified in the Appearance Release Agreement.

30.    The hearing on Dos Amicas' motion in the Tennessee Litigation was originally scheduled for May 29, 2026, but ultimately continued until July 31, 2026 due to McLendon's above-referenced withdrawal as Spirko's attorney in the Tennessee Litigation.

31.    That hearing has now been further continued until August 11, 2026 due to Spirko just recently retaining new counsel in the Tennessee Litigation.

32.    Accordingly, as of the date of the filing of this FAC, no evidence has been presented or admitted, nor have any substantive arguments or decisions been made in that action.

## THE PROJECT, DEFENDANTS' BREACH AND INTERFERENCE

33.    Pavlovich has decades of entertainment experience and served as a central on-screen participant and production contributor to HBO Max's The Way Down: God, Greed, and the Cult of Gwen Shamblin.

34.    Alexandrova similarly has extensive entertainment-production experience in Los Angeles County, California and internationally.

35.    Spirko and Dos Amicas' managing member, Natasha Pavlovich, were acquaintances when Spirko was assigned to work as a court-appointed psychologist in connection with a family law matter Ms. Pavlovich was a party to in or around 2019.

36.    In or around November 2023, Spirko became involved in her professional capacity as a Forensic & Clinical Neuropsychologist with the legal proceedings surrounding charges filed against Zach and Dylan Adams for the alleged murder of Holly Bobo in Tennessee (the "Adams Proceedings").

37.    During that same time (in November 2023), Spirko was traveling with Pavlovich and Alexandrova in Italy and urged Pavlovich and Alexandrova to develop a long-form documentary concerning the Adams Proceedings.

6

**FIRST AMENDED COMPLAINT**

38. Knowing of Pavlovich's and Alexandrova's extensive experience in the entertainment industry, including connections in Los Angeles County, California, Spirko offered access to key persons, investigative materials, case-related files, recordings, and information as a foundation for the production of the documentary project she was encouraging Pavlovich and Alexandrova to develop.

39. From November 2023 through in or around May 2025, Spirko communicated regularly with Pavlovich and Alexandrova regarding production strategy and participants for the proposed documentary project, investigative materials she purported to have access to, logistics regarding filming, and inquired about entertainment industry connections in or around Los Angeles County, California.

40. In addition, Spirko supplied investigative materials and other information obtained from the Federal Bureau of Investigation ("FBI") and records from the Adams Proceedings, which included, among other things, audio and video recordings and interview transcripts from the Adams Proceedings, all for use in the Project she was continually encouraging Plaintiff to produce.

41. Spirko represented she would engage, actively did engage in marketing of Plaintiff's business, and encouraged continued investment and development of the proposed documentary project.

42. As alleged in Spirko's Complaint in the Tennessee Litigation, Spirko admits she sought Dos Amicas' knowledge and experience for the purpose of "creating a project" about the Adams Proceedings.

43. In addition, beginning in or around November 2023, Pavlovich traveled to Los Angeles County on multiple occasions to work with Alexandrova on development of the Project, participate in production meetings, meet with producers and production professionals, review footage and storyboards, evaluate camera, sound, and editing resources, and advance the Project's production, financing, and distribution prospects.

44. Plaintiff participated in multiple substantive production-development

**FIRST AMENDED COMPLAINT**

meetings with established Los Angeles County production companies, producers, and entertainment-industry professionals, including in-person meetings in Los Angeles. Those relationships and meetings are documented by contemporaneous emails, meeting confirmations, Zoom records, and a California studio reservation.

45. Eventually, and following such pre-production discussions and meetings, Dos Amicas advised Spirko that if Dos Amicas were to pay production costs and actively engage in production of the proposed documentary, Spirko would be required to sign an exclusivity agreement.

46. To that end, one of the production companies with which Plaintiff had been working regarding the Project, provided Dos Amicas with the participant-release template it used for Netflix-related productions and represented that the template had previously been approved for such use.

47. Ultimately, in or around June 2024, Dos Amicas agreed to produce a documentary with an initial working title of "The Zachary and Dylan Adams Story" (the "Project") for which Dos Amicas maintains and possesses "[a]ll rights in and to the Materials and the Production" which would be "[Dos Amicas'] sole and absolute property with the right, throughout the world, including under copyright, to use and license to use, all or any portion of the Materials." *See* **Exhibit A** (second full paragraph).

48. As alleged above, in Paragraph 11 above, on June 13, 2024, Spirko executed the Appearance Release Agreement with Dos Amicas.

49. Spirko executed the Appearance Release Agreement, which expressly acknowledges that it was made in exchange for good and valuable consideration.

50. In addition, Plaintiff conferred substantial benefits by creating, to Spirko's benefit, a professionally developed documentary opportunity in which Spirko sought a prominent expert role.

51. To that end, Plaintiff arranged professional filming, incurred production expenses, developed her appearance and materials for the Project, and used Los

8

**FIRST AMENDED COMPLAINT**

Angeles industry relationships to pursue production, financing, and distribution.

52. Dos Amicas and other production company contacts made Spirko explicitly aware of the nature, necessity and legal impact of the Appearance Release Agreement for herself and other contributors to the Project before cameras began rolling and content was generated.

53. Spirko also agreed to and did obtain the consent, as well as similarly exclusive appearance release agreements, from key contributors to the Project, Cindy and John D. "Dick" Adams.

54. In reliance on Spirko's participation and promised access to and exclusive use of the information, some of which she had already shared with Plaintiff, Plaintiff commenced production of the Project, including the attendant costs of, among other things, retaining a camera and sound crew, renting professional equipment, funding travel, creating storyboards and episode architecture, and creating a "sizzle reel" and written treatment for the Project.

55. Spirko insisted and relished the opportunity to be an active participant in the Project, including appearing on camera.

56. Based on information and belief, Spirko's heightened involvement in production and participation in the Project was motivated by a desire to be involved in the entertainment industry and advance her professional work as a forensic psychologist.

57. As such, Spirko agreed to be available to render on-camera services when and where reasonably requested during the production period.

58. Plaintiff commenced production promptly and Dos Amicas provided a camera crew to shoot footage of Spirko attending a hearing in the Adams Proceedings in Savannah, Tennessee.

59. Following the initial shoot in June 2024, Dos Amicas continued with necessary back-end development of the Project and planning to develop the Project in an entertainment-based and informative manner.

**FIRST AMENDED COMPLAINT**

## <u>SPIRKO & MCLENDON'S COMPETING ENDEAVOR & EFFORTS TO STIFLE PRODUCTION OF THE PROJECT</u>

60. Notwithstanding the promises made by Spirko to Dos Amicas regarding production, exclusivity and confidentiality as reflected in the Appearance Release Agreement and otherwise, Spirko maintained and operated a podcast with McLendon entitled "Trial & Error."

61. The nature of Spirko and McLendon's business venture is described in detail in the State's Motion to Clarify Record Relative to Representation of Katie Spirko (the "State's Motion"), which was filed by Special Counsel for the 25th Judicial District of the State of Tennessee and Assistant Attorney General on March 7, 2025. A copy of this motion is attached to this FAC as **Exhibit D**.

62. Exhibit K to the State's Motion is a document entitled Supplemental Motion for Substitution of Counsel and Declaration of Dana C. McLendon III ("McLendon Declaration").

63. In the McLendon Declaration, McLendon seeks to clarify the scope of his representation of Spirko explaining he was retained by her to address a motion by the State of Tennessee to subpoena her in the Adams Proceedings.

64. In addition, McLendon explains why his representation of Spirko should not have created any confusion as to whether he represented defendant Zach Adams in the Adams Proceedings.

65. McLendon also states, at Paragraph 12 of the McLendon Declaration, that "Dr. Spirko and I subsequently decided to produce a podcast covering the captioned case."

66. McLendon goes on to state at Paragraph 13 of the McLendon Declaration "Mindful of my obligations under Rule 1.16 and 3.6 of the Rules of Professional Conduct, it is appropriate for me to withdraw as counsel for Dr. Spirko."

67. Nonetheless, as discussed above, McLendon later represented Spirko in the Tennessee Litigation against Dos Amicas until his withdrawal on May 28, 2026.

**FIRST AMENDED COMPLAINT**

68. Prior to filing the Tennessee Action on behalf of Spirko, McLendon and Spirko engaged with Dos Amicas about the Project as well.

69. Specifically, at one point during production of the Project, Spirko advised Pavlovich that another producer told her that she and McLendon could receive approximately $50,000 each for appearing in a documentary.

70. In response, Plaintiff explained that documentary participation did not operate that way in the industry, nor was such compensation reflected in the Appearance Release Agreement.

71. Further, in or around May 2025, Dos Amicas arranged a production-development Zoom interview with Anthony Phoenix, a former witness with direct knowledge of the Adams Proceedings which were relevant to the Project.

72. Dos Amicas created, controlled, and recorded the Zoom production interview with Mr. Phoenix through its business Zoom account. Both Spirko and McLendon requested invitations and obtained access from Plaintiff. Alexandrova conducted the interview on behalf of Dos Amicas from Los Angeles, California; Pavlovich participated from Illinois; and Spirko and McLendon participated from Tennessee. During the interview, the parties expressly discussed that Plaintiff's production operations and industry development were being conducted in California.

73. During this meeting, Spirko encouraged McLendon's participation and repeatedly urged Plaintiff to allow McLendon to control, or otherwise lead, the meeting and interview of Mr. Phoenix.

74. As production proceeded, Spirko and McLendon began advancing a competing narrative and angle for the focus of the Project, which differed substantially from Plaintiff's editorial approach, despite the fact that Plaintiff possessed "[a]ll rights in and to the Materials and the Production" pursuant to the Appearance Release Agreement.

75. Eventually, on May 15, 2025, during a call between Plaintiff, Spirko and McLendon, McLendon requested a copy of the Appearance Release Agreement signed

**FIRST AMENDED COMPLAINT**

by Spirko.

76. A day later, on May 16, 2025, Spirko aggressively demanded that Plaintiff "within one hour," "rip the [Appearance Release Agreement] apart or else," Spirko would no longer cooperate with production of the Project and encourage other participants to breach their respective Appearance Release Agreements.

77. In that regard, Spirko took her threats further by asserting she would prevent other contributors to the Project, namely Adams family members Cindy and John D. "Dick" Adams, who had also executed Appearance Release Agreements with Dos Amicas.

78. Spirko also demanded that all Appearance Release Agreements associated with Dos Amicas' Project be voided, or she would have McLendon invalidate or otherwise challenge the enforceability of the agreements.

79. More specifically, Spirko stated "[y]our contract is not valid anyway. There is no chance I will be honoring it"; and "[v]oid it now . . . or he [referring to McLendon] will challenge it legally and no one will work with you."

80. Spirko expressly connected her demand to Plaintiff to void the Appearance Release Agreement to the development of the "Trial & Error" podcast.

81. As alleged above, also on May 16, 2025, Spirko reserved the name "Dos Amicas LLC" with the California Secretary of State.

82. McLendon also conveyed to Plaintiff that he and Spirko were no longer directing their attention to the Project but rather moving forward as a commercial enterprise, not via an existing attorney-client relationship, which McLendon had previously terminated.

83. Spirko also communicated to Pavlovich that she and McLendon wanted podcasting to become their regular work, further demonstrating that Trial & Error was being developed as an ongoing competing media venture rather than merely an isolated public-commentary appearance.

84. When Plaintiff expressly asked McLendon whether he was acting as

**FIRST AMENDED COMPLAINT**

Spirko's attorney in making such representations, he declined to answer.

85. During a period ranging from approximately the end of May 2025 through December 2025, Spirko was sequestered by the court in the Adams Proceedings, yet McLendon continued to operate the "Trial & Error" podcast disseminating information emanating from sources which Spirko had promised to provide exclusively to Plaintiff in accordance with the terms of the Appearance Release Agreement.

86. During that time, McLendon continued to communicate with Plaintiff regarding the status of the Project and whether any deals had been made, specifically with production contacts tied to Netflix.

87. Specifically, on September 12, 2025, McLendon sent a text message to Pavlovich stating "Natasha, four months ago you reported to us that you were on the cusp of a deal with Netflix. We haven't heard anything since then. What is the status of that project?"

88. On September 15, 2025, McLendon sent an email to Pavlovich stating "Nearly four months have passed since you reported to us that you were on the cusp of an agreement with Netflix. It appears that nothing has been done and no progress made since the initial filming in summer 2024. What is the status of the project? Dr. Spirko and I are moving on to other opportunities."

89. At that same time, the Trial & Error podcast also publicly promoted its content as including exclusive information, direct source audio, investigative details not previously presented in court, and never-before-heard recordings.

90. During Spirko's sequestration period while she did not personally host the podcast, McLendon continued publishing episodes that used or analyzed source interrogation recordings and investigative audio.

91. With full knowledge of the Appearance Release Agreement, Spirko and McLendon turned their attention to the "Trial & Error" podcast, thereby causing and/or assisting Spirko's breach of the Appearance Release Agreement and, based on

13

**FIRST AMENDED COMPLAINT**

information and belief, interfering with Plaintiff's agreements with other Project contributors, including Cindy Adams.

## PLAINTIFF'S DAMAGES

92. Although Plaintiff reserves the right to prove its damages through discovery (including expert discovery), at the time of trial, Plaintiff alleges its damages presently exceed the $75,000 jurisdictional minimum as alleged above.

93. As also alleged above, upon agreeing to work with Spirko and develop the Project, Plaintiff incurred amounts in the tens of thousands to retain a film crew to film Spirko engaging in activities relating to the Adams Proceedings.

94. Plaintiff has also expended resources associated with efforts to rectify participation of contributors for the Project after being forced to pivot their efforts due to Defendants' collective efforts to stifle production of the Project in favor of their competing podcast.

95. Plaintiff intends to, if necessary, rely upon expert witness testimony to establish diminution in value associated with the delayed production of the Project, including, but not limited to, loss of contacts and connections that could have facilitated production.

96. Plaintiff has also been forced to incur legal expenses resulting from Defendants' collective threats to utilize and active efforts to initiate litigation as a method of asserting pressure on Plaintiff to invalidate the valid and enforceable Appearance Release Agreement.

97. As time continues to pass while Plaintiff is forced to engage in the litigation filed by Defendants and this litigation in the proper forum, Plaintiff has lost the ability to continue production of the Project at the rate anticipated which has impaired the marketability and ultimate value of the Project.

98. But for Spirko's repudiation and withdrawal of cooperation beginning May 16, 2025, Defendants' diversion of contracted participation to their competing venture, and the Tennessee Litigation commenced October 1, 2025, the Project would

14

**FIRST AMENDED COMPLAINT**

have been completed or materially advanced by the present date. Those events, therefore, impaired Plaintiff's participant rights, chain of title, errors-and-omissions clearance, production schedule, financing and distribution prospects, and relationships with established Los Angeles County production companies and professionals.

### FIRST CAUSE OF ACTION
Declaratory Relief Pursuant to 28 U.S.C. § 2201
(Against Spirko and Does 1 through 10)

99.    Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 98.

100.    An actual and present controversy exists between Plaintiff, on the one hand, and Spirko, on the other hand, regarding the validity and enforceability of the Appearance Release Agreement.

101.    Plaintiff alleges the Appearance Release Agreement is supportable by valid consideration and enforceable, including with respect to the conferring of exclusive rights to production of the Project by Plaintiff, the exclusive use of Spirko's independent knowledge and access to information regarding the Adams Proceedings, confidentiality of information associated with the production of the Project, and jurisdictional elements of the Appearance Release Agreement, among other provisions.

102.    Spirko, on the other hand, alleges the Appearance Release Agreement is not valid in all respects and "void."

103.    Court intervention is required to resolve the dispute that exists between Plaintiff and Spirko regarding the validity of the Appearance Release Agreement.

104.    Accordingly, Plaintiff seeks a judicial declaration from this Court that the Appearance Release Agreement is valid and enforceable with respect to each material term and, should any single provision be found unenforceable, the remaining terms be found enforceable.

///

15

**FIRST AMENDED COMPLAINT**

## SECOND CAUSE OF ACTION
Breach of Written Contract
(Against Spirko and Does 1 through 10)

105.   Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 104.

106.   Spirko was well aware of the nature, necessity and purpose of the Appearance Release Agreement when she executed it on June 13, 2024.

107.   The Appearance Release Agreement was explained to Spirko, and she was made fully aware of its utility and necessity and widespread use in the industry.

108.   Spirko executed the Appearance Release Agreement in consideration of the benefit to be derived for herself and Dos Amicas.

109.   Dos Amicas performed all its obligations under the Appearance Release Agreement, has not breached any obligation thereunder, nor does Spirko assert it has in her Tennessee Litigation.

110.   Spirko expressly advised Dos Amicas of her intention to breach the Appearance Release Agreement on multiple occasions.

111.   Spirko then did breach the Appearance Release Agreement by, among other things, refusing reasonably requested services; repudiating irrevocable permissions; attempting to restrain and interfere with Plaintiff's production and exploitation; disclosing or using confidential production information where applicable; refusing to honor release and indemnity obligations; and participating and cooperating in a competing media work in violation of the exclusivity provision.

112.   As alleged above, Plaintiff has suffered damages as a result of Spirko's breach.

113.   Plaintiff seeks direct and consequential damages from Spirko for her breach of the Appearance Release Agreement, according to proof at trial.

///

///

16

**FIRST AMENDED COMPLAINT**

### THIRD CAUSE OF ACTION
Breach of the Implied Covenant of Good Faith and Fair Dealing
(Against Spirko and Does 1 through 10)

114.    Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 113.

115.    Implied into every California contract, including the Appearance Release Agreement, is the implied covenant of good faith and fair dealing.

116.    The genesis and purpose of the Appearance Release Agreement was to benefit Dos Amicas *and* Spirko.

117.    However, Spirko, apparently upon determination that she preferred to work with McLendon to develop "Trial & Error," acted unreasonably and without proper cause and stripped Dos Amicas of the right to its benefit of the parties' bargain.

118.    As a result of Spirko's outright, unreasonable breach of the Appearance Release Agreement, Dos Amicas is entitled to direct and consequential damages to be proven at trial.

### FOURTH CAUSE OF ACTION
Intentional Interference with Contractual Relations
(Against McLendon and Does 1 through 10)

119.    Plaintiff incorporates by reference, as if fully alleged in this paragraph, the allegations of preceding paragraphs 1 through 118.

120.    As alleged above, Dos Amicas has a valid and enforceable Appearance Release Agreement with Spirko, as well as other contributors to the Project, including John D. "Dick" and Cindy Adams.

121.    McLendon is not a party to the Appearance Release Agreement.

122.    However, McLendon has knowledge of the Appearance Release Agreement and requested and was provided a copy of the same in connection with his participation in the Project alongside Spirko.

123.    McLendon's involvement with the Project was not represented to be as

17

**FIRST AMENDED COMPLAINT**

counsel for Spirko, but rather commercial in nature.

124. Based on information and belief, McLendon directed, or otherwise assisted Spirko in not honoring contractual obligations under the Appearance Release Agreement, steering her attention to a competing commercial venture.

125. Plaintiff alleges the competing commercial venture, the Trial & Error podcast, benefitted from confidential and non-public information that was supplied, developed and/or promised to be provided by Spirko to Plaintiff only pursuant to the Appearance Release Agreement.

126. McLendon even engaged in such conduct in Spirko's stead when she was unable to speak publicly about the Adams Proceedings.

127. Based on information and belief, McLendon assisted in facilitating breaches of exclusivity agreements by other contributors to the Project that were also bound by exclusivity agreements.

128. McLendon actively participated with Plaintiff in production meetings and interviews relating to and for the benefit of the Project with the ulterior motive of utilizing Plaintiff's insights and connections and then assisted Spirko in diverting her attention to a competing enterprise through which Spirko breached the Appearance Release Agreement.

129. McLendon was an active and encouraging participant in Spirko's decision to intentionally breach her Appearance Release Agreement, which is subject to California law, reflects Spirko's consent to jurisdiction in the County of Los Angeles, California, and relates to a Project that substantially involved production within California.

130. McLendon engaged in such actions as Spirko's partner, via an unknown organized entity or otherwise, and not in his capacity as her attorney which McLendon has admitted in sworn statements submitted to courts in the State of Tennessee.

131. McLendon's conduct was a substantial factor in the damages suffered by Plaintiff as alleged in this FAC.

18

**FIRST AMENDED COMPLAINT**

132.    Accordingly, Plaintiff is entitled to direct and consequential damages as alleged in this FAC and according to proof at trial.

## PRAYER FOR RELIEF

As a result of Defendants' conduct as alleged in this Complaint, Plaintiff seeks the following damages in connection with its causes of action against Defendants:

1.    A judicial declaration from this Court that the Appearance Release Agreement is valid and enforceable with respect to each material term and, should any single provision be found unenforceable, the remaining terms be found enforceable;

2.    Direct and consequential damages as the result of Spirko's breach of contract;

3.    Direct and consequential damages as the result of Spirko's breach of the covenant of good faith and fair dealing;

4.    Actual and consequential damages, according to proof, against McLendon arising out of his intentional interference with the Appearance Release Agreement;

5.    Consequential damages in the form of lost profits and future lost profits resulting from Defendants' efforts to breach the Appearance Release Agreement and intentionally interfere with the same;

6.    Attorneys' fees associated with efforts to prevent, rectify and respond to Defendants' efforts to breach the Appearance Release Agreement, to the extent authorized by the Appearance Release Agreement and applicable law;

7.    Attorneys' fees incurred and paid as the result of the necessity of bringing this action, to the extent authorized by the Appearance Release Agreement and applicable law;

8.    Costs of suit incurred and paid by Plaintiff in connection with bringing this action; and

///

///

**FIRST AMENDED COMPLAINT**

9.     Whatever other relief the Court deems necessary and proper.

Dated:  August 5, 2026

**THE LAW OFFICE OF MICHAEL DAVID DOUGLAS (MDDLegal)**

By: /s/ *Michael David Douglas*
Michael David Douglas, Esq.
Attorney for Plaintiff DOS
AMICAS LLC

20

**FIRST AMENDED COMPLAINT**

## **DEMAND FOR JURY TRIAL**

Plaintiff DOS AMICAS LLC demands a jury trial on each and every claim, issue and cause of action alleged in this First Amended Complaint.


Dated:  August 5, 2026                          **THE LAW OFFICE OF MICHAEL DAVID DOUGLAS (MDDLegal)**

By:  /s/  *Michael David Douglas*
          Michael David Douglas, Esq.
          Attorney for Plaintiff DOS
          AMICAS LLC

21

**FIRST AMENDED COMPLAINT**

# EXHIBIT A

## APPEARANCE RELEASE ("RELEASE")

For good and valuable consideration, the receipt and sufficiency of which is acknowledged, I hereby grant **DOSAMICAS LLC**, its parents, affiliates, subsidiaries, designees, employees, representatives, licensees, successors and assigns (collectively, "**Producer**") the absolute and irrevocable right and permission (but not the obligation) to photograph, film, videotape, record, reproduce, portray and/or otherwise exploit my name, voice, conversations, sounds, persona, appearance, signature, photograph, portrayal, mannerisms, personal characteristics, biographical material, image and/or likeness, as well as any and all musical compositions/performances, stories, statements or actions made by me, whether written, spoken, sung, or otherwise uttered or expressed by me, information given and/or materials provided by me, including without limitation any personal medical and/or health information, (all of the foregoing, collectively referred to hereinafter as the "**Material**") in and in connection with the production currently entitled "**THE ZACHARY AND DYLAN ADAMS STORY.**"

All rights in and to the Materials and the Production, including negatives, outtakes, sounds, and the images contained therein shall be Producer's sole and absolute property with the right, throughout the world, including under copyright, to use and to license others to use, all or any portion of the Materials, in any manner and in any and all media of any kind, now known or hereafter devised, in or in connection with the Production or in any other production, and in advertising and promotion thereof, or of the Producer, in perpetuity. Such rights include, but are not limited to, the right to use, incorporate, broadcast, telecast, exhibit, distribute, re-use, publish, re-publish, alter, edit, delete, juxtapose the Materials with any other materials, change the sequence of events or questions posed and/or answers I give, dub (in Producer's sole discretion), or make any other changes to the Material, in whole or in part, alone or in conjunction with other material in and in connection with the Production or otherwise.

I agree to be available to render on-camera services when and where reasonably requested by Producer during the production period. For clarification, except as expressly set forth herein, no compensation shall be payable to me or to any third parties in connection with this Release. To the extent that I receive anything of value in connection with the Production, including but not limited to goods and services, I shall be responsible for all taxes and other obligations that are or may become due from me.

I represent and warrant that any statements made by me to Producer, or in connection with the Materials and Production, are true and will not violate or infringe upon any third party's rights.

I acknowledge that Producer will rely on the permissions granted herein, at substantial cost to them, and I agree not to assert any claim of any nature whatsoever (including claims for injunctive relief or money damages, all of which I hereby knowingly waive) against anyone relating to the exercise of this permission or to the use of the Materials by Producer. I agree to irrevocably release, indemnify and hold harmless Producer from any and all claims, demands, costs (including outside attorney's fees) and causes of action of any kind or nature whatsoever now and in the future, including without limitation defamation, bodily harm, emotional distress, invasion of privacy, and right of publicity, arising out of or in connection with my appearance, statements or actions in or in connection with the Materials, Production, any related advertising and promotion, or any of the uses described herein. In such regard, I expressly waive any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

In signing this Release, I am not relying on any representations or other statements that are not contained herein. I understand and acknowledge that I will not be able to revoke my permission after I have signed this Release nor will I have any right to restrain, enjoin, restrict or interfere with the production, distribution, exhibition and exploitation of the Production or any related advertising or promotion or any use of the Materials, or to seek to do any of the foregoing. I agree that I shall have no right to review or approve the Production or any related advertising or promotion or any use of the Materials.

Except as requested and/or permitted by Producer in writing in each instance, I agree that: (i) I shall not participate in, or cooperate in any manner with, any other project or work in any media (including, without limitation, audiovisual and/or audio-only works) that is about the same or similar subject matter as the Production from the date hereof until the date that is one (1) year following the initial commercial release of the Production and (ii) I shall not issue (nor shall anyone issue on my behalf) any press releases or other public statements, or speak to the press about the Production, my involvement in the Production, or Producer. I shall keep confidential any and all information I may learn, or be made aware of, related to the Production or Producer. This Release shall be governed by and construed in accordance with the laws of the State of California applicable to agreements made entirely therein and the parties hereto agree to submit to jurisdiction in the State of California in the City and County of Los Angeles. This Release sets forth the entire agreement between myself and Producer and may not be altered or amended except in writing signed by both parties. This Release may be executed and delivered by facsimile or other electronic transmission and/or by PDF signature.

I have read this Release prior to signing it and understand its contents.

(Print) Name: Katie Spirko     Signature: _Katie Spirko_     Date: 6/13/24

Address: 2200 21st Ave, South,     Telephone: 402-680-4229
Suite 401, Nashville TN
37212

# EXHIBIT B

E-FILED
10/1/2025 6:13 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

IN THE CHANCERY COURT OF
DAVIDSON COUNTY, TENNESSEE

KATIE O. SPIRKO

v.

DOSAMICAS LLC, IRENA
ALEXANDROVA, NATASHA PAVLOVICH

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

1. Plaintiff Katie Spirko ("Dr. Spirko"[1]) is an adult resident of Davidson County, Tennessee.

2. Defendant Dosamicas, LLC ("Dosamicas") is, upon information and belief, a Nevada limited liability company owned by the individual defendants, Irena Alexandrova ("Alexandrova") and Natasha Pavlovich ("Pavlovich"). Dosamicas purportedly has a place of business and purportedly does business in California, but it does not appear to be registered to do business in Calfornia as a foreign LLC.

3. Alexandrova is upon information and belief a resident of California.

4. Pavlovich is upon information and belief a resident of Illinois. Pavlovich has previously been a resident of Tennessee and has had extensive contact with Tennessee, including extensive history in litigation in the courts of middle Tennessee.

5. This Court has subject matter jurisdiction under Tenn. Code Ann. § 16-11-102, including equitable jurisdiction, and pursuant to Tenn. Code Ann. § 29-14-103 (Declaratory Judgment Act).

6. Venue is proper in Davidson County because Dr. Spirko resides here, the purported "Release" was executed in Tennessee, and enforcement of the Release as against Dr. Spirko in Davidson County would substantially affect Dr. Spirko's rights in this venue and jurisdiction, and others.

7. In 2023, Dr. Spirko became involved as a consulting expert witness and potentially a testifying expert witness in a post-conviction criminal case, *State v. Zach Adams*. Zach Adams was convicted in 2017 of the high profile kidnap and rape of Holly Bobo, and his post conviction relief petition is pending in Hardin County, Tennessee. Shortly after Zach Adams' conviction, his younger brother Dylan Adams entered an *Alford* plea. Both men remain in prison.

8. Zach Adams' counsel engaged Dr. Spirko for various services in connection with that case. As part of her work on that case, Dr. Spirko has become deeply invested in the advocacy for Zach

---

[1] Katie Spirko is a practicing and licensed psychologist who has testified as an expert witness in many local courts and will be referred to herein as "Dr. Spirko."

Adams, and has appeared in podcasts and documentary video programs as an advocate for Zach Adams. Dr. Spirko has become a trusted resource for Zach Adams and Zach's family, including his mother, Cindy, and his grandfather, Dick.

9. By 2023, Dr. Spirko, Alexandrova, and Pavlovich had become acquainted with one another. Dr. Spirko had previously been involved in other litigation involving Pavlovich. Pavlovich and Alexandrova were previously acquainted, and Pavlovich introduced Dr. Spirko to Alexandrova.

10. While the three were together after Dr. Spirko had become involved in *State v. Zach Adams*, the topic of her involvement came up among Dr. Spirko, Pavlovich, and Alexandrova.

11. Dr. Spirko, as part of her work with and on behalf of Zach Adams has sought to raise awareness of the case in many media forms, including podcasts and video documentary programs. To that end, Dr. Spirko had explicitly informed Pavlovich that Dr. Spirko would not sign anything that limited her ability to advocate for Zach Adams in media or otherwise.

12. Pavlovich mentioned to Dr. Spirko the possibility of creating a project involving the *State v. Zach Adams* story. Dr. Spirko, always seeking avenues to advocate for Zach and Dylan, was receptive to the idea of Pavlovich and/or Alexandrova creating a project on the subject.

13. In or about June 2024, Dr. Spirko was scheduled to attend court in the *State v. Zach Adams* case in Savannah, Tennessee. Dr. Spirko told Pavlovich, who suggested that she could arrange a film crew to tag along and create some content of the day. Pavlovich did arrange for, as best Dr. Spirko can remember, two men to accompany Dr. Spirko on that day.

14. On or about 16 June 2024, defendants' agent, the cameraman, presented Dr. Spirko with a document entitled "Appearance Release" (the "Release"). A true and correct copy is attached as Exhibit 1.

15. Without any advance notice or discussion, one of the men in the "film crew" presented Dr. Spirko what he called a "release" before he began filming. Dr. Spirko understood the "release" was to permit the recording to be used by her permission. The Release was presented as merely a release to record Dr. Spirko. At no point did Dr. Spirko and the defendants (or their agents) discuss, negotiate, or even contemplate any kind of "exclusivity" or covenant not to compete by Dr. Spirko. Indeed, Dr. Spirko had previously informed defendants she could not and would not limit her ability to advocate for Zach and Dylan.

16. The Release purports to grant Defendant sweeping, perpetual rights over Plaintiff's name, likeness, image, voice, persona, biographical material, and personal statements.

17. The Release requires Dr. Spirko to indemnify Dosamicas, waives all potential claims (including unknown future claims), imposes confidentiality obligations, restricts remedies, bars the courthouse to Dr. Spirko, and contains a one-year non-compete provision that doesn't even begin until a date that Dr. Spirko can neither trigger nor even influence.

18. The Release states that Dr. Spirko will receive no compensation, and Dr. Spirko in fact has received nothing of value in exchange for signing it, and according to the Release will never get anything of value in exchange for the onerous obligations and constraints imposed upon her.

19. The Release purports to require Dr. Spirko to do additional, on-camera work for an indefinite period of time, with no boundaries on reasonableness as to time, place, personal expense, or otherwise.

20. Dr. Spirko did not negotiate, and did not have the opportunity to negotiate, the terms of the Release. It was presented on a take-it-or-leave-it basis.

21. The defendants have not, to Dr. Spirko's knowledge, done any further work or made any further progress on a project involving the subject matter since the one day a camera crew tagged along with Dr. Spirko. Even then, during that day, the camera crew recorded little or nothing about the subject matter of Zach and Dylan. Instead, the same cameraman, upon information and belief, also solicited and received substantially identical "releases" from Cindy Adams and Dick Adams, ostensibly burdening them the same as defendants claim to have contractual rights vis a vis Dr. Spirko.

22. Since the June 2024 date, Dr. Spirko has continued to publicly advocate for Zach and Dylan Adams, including by participating as co-host of *The Trial and Error Podcast*. Defendants have had actual knowledge of the publication of the podcast since it was first published in early March 2025. At no time, before late September 2025, did the defendants protest Dr. Spirko's public participation in any project related to the subject matter.

23. When point blank asked what the status of the project was more than a year after the Release was signed, the defendants, instead of providing a good faith and substantive reply, merely issued demands for capitulation to the "exclusivity" purportedly created in the Release. See Exhibit 2. Upon information and belief, there is no "project," the defendants have neither the ability nor the interest in pursuing the project, and defendants are merely trying to hold Dr. Spirko hostage to an unconscionable, unenforceable contract in bad faith.

24. The Release is one-sided, unconscionable, burdensome, and lacks consideration, and is therefore unenforceable and should be vitiated.

25. An actual controversy exists regarding the validity and enforceability of the Release, as demonstrated in the recent correspondence between the undersigned counsel and the defendants, which is attached as Exhibit 2.

26. Under Tenn. Code Ann. § 29-14-103 and the law of California, Plaintiff is entitled to a declaration that the Release is unenforceable.

27. Under Tennessee law and California law, the Release is unenforceable for lack of consideration.

28. The Release was a contract of adhesion presented without negotiation, and is unenforceable as an unconscionable purported contract.

29. The Release contains substantively unconscionable terms, including perpetual waivers of rights, indemnification, non-compete, and waiver of rights and privileges without consideration under the law of Tennessee and California.

30. The Release purports to waive fundamental rights of publicity, privacy, and statutory protections under both Tennessee and California law, rendering the Release unenforceable.

31. Waiver of all future unknown claims, bodily injury, and emotional distress claims contravenes Tennessee and California public policy.

32. The Release is not perfectly fair, equal, and just in its terms and circumstances and is unenforceable under California law.

33. The Release is unenforceable under Tennessee law for reasons of fraud, mistake, duress, and undue influence by defendants upon Dr. Spirko.

34. The contract is ambiguous and unclear to the extent it is unenforceable under the law of California and Tennessee.

35. The Release bars Plaintiff from participating in any similar projects for one year following the Production's release, a date completely out of the control or even the influence of Dr. Spirko, and too ambiguous to be enforceable. This provision, by itself, is unconscionable and unenforceable.

36. As a noncompete contract, even if the balance of the document is enforceable, the length and terms of the noncompete are unenforceable altogether; alternatively the terms should be subject to a "blue pencil" to conform the terms to the law of Tennessee and/or California, including by releasing Dr. Spirko from any term of "exclusivity" with the defendants.

37. The Release grants Defendant unlimited rights to Plaintiff's likeness in perpetuity, while imposing no reciprocal obligations on Defendant, an unconscionable and unenforceable provision under the law of either Tennessee or California.

38. Defendants come before this court with unclean hands and should be estopped from attempting to enforce the Release.

Plaintiff respectfully requests that this Court:

1. Declare the Release invalid, void, voidable, and/or unenforceable;

2. Permanently enjoin Defendants from seeking to enforce the Release against Dr. Spirko;

3. Award Dr. Spirko costs of this action; and

4. Grant such other relief as the Court deems just and proper.


Respectfully submitted,

*/s/ Dana C. McLendon III*
Dana Crosland McLendon III (#016214)
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com

## APPEARANCE RELEASE ("RELEASE")

For good and valuable consideration, the receipt and sufficiency of which is acknowledged, I hereby grant **DOSAMICAS LLC**, its parents, affiliates, subsidiaries, designees, employees, representatives, licensees, successors and assigns (collectively, "**Producer**") the absolute and irrevocable right and permission (but not the obligation) to photograph, film, videotape, record, reproduce, portray and/or otherwise exploit my name, voice, conversations, sounds, persona, appearance, signature, photograph, portrayal, mannerisms, personal characteristics, biographical material, image and/or likeness, as well as any and all musical compositions/performances, stories, statements or actions made by me, whether written, spoken, sung, or otherwise uttered or expressed by me, information given and/or materials provided by me, including without limitation any personal medical and/or health information, (all of the foregoing, collectively referred to hereinafter as the "**Material**") in and in connection with the production currently entitled "**THE ZACHARY AND DYLAN ADAMS STORY.**"

All rights in and to the Materials and the Production, including negatives, outtakes, sounds, and the images contained therein shall be Producer's sole and absolute property with the right, throughout the world, including under copyright, to use and to license others to use, all or any portion of the Materials, in any manner and in any and all media of any kind, now known or hereafter devised, in or in connection with the Production or in any other production, and in advertising and promotion thereof, or of the Producer, in perpetuity. Such rights include, but are not limited to, the right to use, incorporate, broadcast, telecast, exhibit, distribute, re-use, publish, re-publish, alter, edit, delete, juxtapose the Materials with any other materials, change the sequence of events or questions posed and/or answers I give, dub (in Producer's sole discretion), or make any other changes to the Material, in whole or in part, alone or in conjunction with other material in and in connection with the Production or otherwise.

I agree to be available to render on-camera services when and where reasonably requested by Producer during the production period. For clarification, except as expressly set forth herein, no compensation shall be payable to me or to any third parties in connection with this Release. To the extent that I receive anything of value in connection with the Production, including but not limited to goods and services, I shall be responsible for all taxes and other obligations that are or may become due from me.

I represent and warrant that any statements made by me to Producer, or in connection with the Materials and Production, are true and will not violate or infringe upon any third party's rights.

I acknowledge that Producer will rely on the permissions granted herein, at substantial cost to them, and I agree not to assert any claim of any nature whatsoever (including claims for injunctive relief or money damages, all of which I hereby knowingly waive) against anyone relating to the exercise of this permission or to the use of the Materials by Producer. I agree to irrevocably release, indemnify and hold harmless Producer from any and all claims, demands, costs (including outside attorney's fees) and causes of action of any kind or nature whatsoever now and in the future, including without limitation defamation, bodily harm, emotional distress, invasion of privacy, and right of publicity, arising out of or in connection with my appearance, statements or actions in or in connection with the Materials, Production, any related advertising and promotion, or any of the uses described herein. In such regard, I expressly waive any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

In signing this Release, I am not relying on any representations or other statements that are not contained herein. I understand and acknowledge that I will not be able to revoke my permission after I have signed this Release nor will I have any right to restrain, enjoin, restrict or interfere with the production, distribution, exhibition and exploitation of the Production or any related advertising or promotion or any use of the Materials, or to seek to do any of the foregoing. I agree that I shall have no right to review or approve the Production or any related advertising or promotion or any use of the Materials.

Except as requested and/or permitted by Producer in writing in each instance, I agree that: (i) I shall not participate in, or cooperate in any manner with, any other project or work in any media (including, without limitation, audiovisual and/or audio-only works) that is about the same or similar subject matter as the Production from the date hereof until the date that is one (1) year following the initial commercial release of the Production and (ii) I shall not issue (nor shall anyone issue on my behalf) any press releases or other public statements, or speak to the press about the Production, my involvement in the Production, or Producer. I shall keep confidential any and all information I may learn, or be made aware of, related to the Production or Producer. This Release shall be governed by and construed in accordance with the laws of the State of California applicable to agreements made entirely therein and the parties hereto agree to submit to jurisdiction in the State of California in the City and County of Los Angeles. This Release sets forth the entire agreement between myself and Producer and may not be altered or amended except in writing signed by both parties. This Release may be executed and delivered by facsimile or other electronic transmission and/or by PDF signature.

I have read this Release prior to signing it and understand its contents.

(Print) Name: _Katie Spirko_    Signature: _Katie Spirko_ Date: _6/13/24_

Address: _2200 21st Ave, South, suite 401, Nashville TN 37212_    Telephone: _402-680-4229_

## Exhibit 1



1:15

< AC **Andy Clapton**



# Andy Clapton >

&? <u>Profile names</u> are not verified

&& Member of Dana Natasha Katie

Fri, Sep 12

🕐 You set disappearing message time to 5 minutes.

🚫 You disabled disappearing messages.

Natasha, four months ago you reported to us that you were on the cusp of a deal with Netflix. We haven't heard anything since then. What is the status of that project?

10:15 AM ✅

# Exhibit 2

+ Message

# Dana Natasha Katie



# Dana Natasha Katie

Andy Clapton, Katie Spirko, and you

Fri, May 16

Katie Spirko added you to the group.

**Katie Spirko**
Dana, I have notified Natasha and Irena that until further notice, neither have my permission to represent themselves as working with my willing participation, cooperation, or collaboration on any projects. I will defer to you fully moving forward on any further contact or communication.

1:22 PM

Fri, Sep 12

Natasha, four months ago you reported to us that you were on the cusp of a deal with Netflix. We haven't heard anything since then. What is the status of that project?

9:45 AM

Message



**September 22, 2025**

Via Email To:
Mr. Dana McLendon / dana@danamclendonlaw.com
Dr. Katie Spirko / katie.spirko@facts.care

Re: Project *The Zachary and Dylan Adams Story*

Dear Mr. McLendon and Dr. Spirko,

This letter responds to your recent communications regarding the Project.

As you know, Dr. Spirko signed a binding release agreement with DOSAMICAS, LLC. That agreement grants the Company exclusive rights to her participation and includes confidentiality and exclusivity provisions.

Any attempt to participate in a competing podcast or production on the same subject **constitutes a material breach** and exposes all parties involved to liability.

We require confirmation by **October 1, 2025** that the agreement will be honored. Please also clarify in writing whether you are contacting the Company as Dr. Spirko's attorney of record or in a personal/podcast capacity.

The Company reserves all rights and remedies for any breach or interference with these agreements.

Sincerely,
Irena Alexandrova
Managing Member
DOSAMICAS, LLC

Dosamicas, LLC   |   4500 Park Granada Suite #202D   |   Calabasas, Ca. 91302
Email: irena@dosamicas.com | www.dosamicas.com

# EXHIBIT C

**IN THE CHANCERY COURT OF DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE**


| | | |
|---|---|---|
| KATIE O. SPIRKO, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 25-1383-III |
| v. | ) | |
| | ) | |
| DOSAMICAS LLC, IRENA ALEXANDROVA, | ) | |
| and NATASHA PAVLOVICH, | ) | |
|     Defendants. | ) | |


**MOTION TO WITHDRAW AS COUNSEL AND TO CONTINUE
HEARING SET FOR MAY 29, 2026**

Dana C. McLendon III, counsel of record for Plaintiff Katie O. Spirko, respectfully moves the Court for (1) leave to withdraw as counsel and (2) a continuance of the hearing presently set for May 29, 2026, on the pending motions to dismiss. The grounds for this Motion are as follows.

1. The undersigned is counsel of record for Plaintiff Katie O. Spirko.

2. On May 6, 2026, Defendant Dosamicas LLC commenced a civil action against Plaintiff Katie O. Spirko and the undersigned counsel, personally, in the United States District Court for the Central District of California. That action is captioned *Dos Amicas LLC v. Spirko and McLendon*, No. 2:26-cv-04915-DSF-SSC. Plaintiff and the undersigned are both named as individual defendants in that action. The undersigned only recently learned of this complaint. The complaint in California is entirely about the conflict at issue in this litigation. Dosamicas' complaint in federal court in California comes approximately 100 days *after* Dosamicas filed its first motion in this case.

3. As a result of the California action, the undersigned is now a co-defendant alongside his client in litigation brought by Plaintiff's adversary in this Court. That alignment creates a present, future and/or potential concurrent conflict of interest between Dr. Spirko as client and the undersigned as counsel and co-defendant under Tennessee Rule of Professional Conduct 1.7.

1 of 3

4. After consultation with the Board of Professional Responsibility, the undersigned has determined that continued representation of Plaintiff in this matter is not compatible with his obligations and/or will become incompatible with his obligations under the Tennessee Rules of Professional Conduct. Withdrawal is therefore appropriate under Tenn. Sup. Ct. R. 8, RPC 1.16, which provides, *inter alia*, that a lawyer "shall withdraw from the representation of a client if … the representation will result in a violation of the Rules of Professional Conduct or other law." The present scenario presents an imminent threat of a rule violation if counsel does not withdraw.

5. Good cause for withdrawal independently exists under RPC 1.16(b)(7).

6. After consultation with Dr. Spirko, Plaintiff has consented to the withdrawal.

7. Plaintiff is in the process of retaining successor counsel.

8. The motions to dismiss filed by Defendant Dosamicas LLC and by Defendant Irena Alexandrova are presently set for hearing on May 29, 2026, at 9:30 a.m. Plaintiff cannot meaningfully be heard on those motions without counsel. Successor counsel will require a reasonable opportunity to enter an appearance, review the file, and prepare for argument.

9. The conflict was not of Plaintiff's making. Dosamicas LLC, this month, sued Dr. Spirko and the undersigned counsel, more than eight months after this litigation was filed and months after Dosamicas began requesting, and getting, continuances. A short continuance to permit Plaintiff to retain successor counsel is therefore appropriate.

10. Pursuant to RPC 1.16(d), the undersigned will take reasonable steps to protect Plaintiff's interests on withdrawal, including delivery of the client file to successor counsel and cooperation in the transition.

11. Local Rule 5.02 of the Local Rules of Practice for the Twentieth Judicial District provides that withdrawal may be granted for good cause upon motion after notice to all parties. Good cause is present here for the reasons stated above.

WHEREFORE, the undersigned respectfully requests that the Court:

1.  Grant leave to withdraw as counsel of record for Plaintiff Katie O. Spirko;

2.  Continue the May 29, 2026 hearing on the pending motions to dismiss pending the appearance of successor counsel for Plaintiff;

3.  Grant such further relief as the Court deems just.

Respectfully submitted,

*/s/ Dana C. McLendon III*
Dana C. McLendon III (#16214)
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195
dana@danamclendonlaw.com
*Attorney for Plaintiff Katie O. Spirko*

**NOTICE OF HEARING**

The foregoing Motion will be heard before the Honorable Chancellor Myles, Part III of the Chancery Court for Davidson County, Tennessee, as soon as counsel may be heard.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was served on 28 May 2026 by electronic filing upon:

Erica D. Baker (#039183)
Anjlee Khurana (#027350)
Prolific Law Nashville, PLLC
1 Music Circle North, Suite 400
Nashville, TN 37203
ebaker@prolificlaw.info
akhurana@prolificlaw.info
Attorneys for Defendant Dosamicas LLC

and by United States mail upon:

Irena Alexandrova                           Natasha Pavlovich
4500 Park Granada, Suite 202D               4500 Park Granada, Suite 202D
Calabasas, CA 91302                         Calabasas, CA 91302
Pro se                                      Pro se

and upon Dr. Katie O. Spirko by electronic mail.
*/s/ Dana C. McLendon III*

# EXHIBIT D

IN THE CIRCUIT COURT OF HARDIN COUNTY
AT SAVANNAH, TENNESSEE

ZACHARY RYE ADAMS,           )
   PETITIONER,               )
                      )
                      )
vs.                          )        No. 17-CR-10-PC
                      )
STATE OF TENNESSEE,          )
   RESPONDENT.               )

---

### STATE'S MOTION TO CLARIFY RECORD RELATIVE TO
### REPRESENTATION OF KATIE SPIRKO

---

Comes now the State of Tennessee by and through the undersigned attorneys and submits the following motion to clarify the record in this cause relative to the representation of Katie Spirko and in support thereof submits the following:

1. Katie Spirko filed a declaration with this Court along with her *curriculum vitae* on **January 22, 2024**. In said declaration, Spirko outlined her work in neuropsychology and false confessions and advised that Attorney Douglas Bates discussed retaining her to "review any particular evidence regarding Inmate Autry's testimony and provide appropriate perspective." (*See Exhibit A*)

2. This filing came shortly after Spirko-working on behalf of Petitioner and Petitioner's attorney, video-recorded a conversation in a federal prison with

FILED _7_ DAY OF _March_ , _2025_ AT _4:30_ AM/(PM)        1

TAMMIE WOLFE, CLERK

BY _Tammie Wolfe_     (CLERK)

Inmate Autry about his testimony during Petitioner's trial that was provided by Spirko to ABC News 20/20. The date of this video recording was **December 22, 2023.**

3. On **April 1, 2024,** Spirko emailed the Tennessee Department of Corrections to schedule a "non-recorded" video conference meeting with Petitioner and "through Attorney Dana McClendon." Attorney McClendon was copied on this email. Upon information and belief, to accommodate Spirko's request, TDOC required the Tennessee bar number of Attorney McClendon and that was provided by Spirko. Attorney Bates, counsel of record for Petitioner, was not included in these communications. *(See Exhibit B).*

4. On **April 5, 2024,** Spirko conducted and recorded her requested video conference with Petitioner. Upon information and belief, ABC News 20/20 participated in said video conference.

5. Also on **April 5, 2024**, Spirko emailed former Assistant District Attorney General Jennifer Nichols advising her that Attorney McClendon represented Spirko. Attorney McClendon was copied on this email. *(See Exhibit C)*

6. On **April 8, 2024**, Spirko attempted to schedule another meeting with Inmate Autry at the same federal facility. She did this via an email on which Attorney McClendon was copied. She inquired whether the prison had a notary on site or whether she should bring one along. It is the State's belief that Spirko

intended to obtain an affidavit from Inmate Autry casting doubt on his trial testimony. Prison officials declined her request to meet with Inmate Autry. Neither Inmate Autry's attorney of record nor Petitioner's attorney were copied on her email. *(See Exhibit D).*

7. On **April 12, 2024**, the State of Tennessee requested this Court issue a subpoena for Spirko to appear in court with certain information. *(See Exhibit E).*

8. On **April 15, 2024**, Attorney McClendon filed with this Court notice of representation of Spirko. *(See Exhibit F).*

9. The State's motion referenced in paragraph 7 above was removed from the docket by the State on **June 14, 2024.**

10. On **February 9, 2025**, Spirko and Attorney McClendon began advertising their upcoming podcast regarding the case at bar on various social media sites. These promotions continue as of the date of this filing.

11. On Friday, **February 14, 2025**, the State of Tennessee issued a Subpoena Duces Tecum for Spirko to provide documents and other information to this Court. *(See Exhibit G)*

12. On **February 20, 2025**, Attorney Cayley Turrin filed a "Motion to Quash" the subpoena issued to Spirko. *(See Exhibit H).*

13. On **February 25, 2025**, Attorney McClendon filed an "Agreed Order of Substitution of Counsel" relative to Katie Spirko. (*See Exhibit I*)

14. On **February 26, 2025,** Attorney McClendon filed another "Agreed Order of Substitution of Counsel" relative to Katie Spirko (*See Exhibit J*)

15. On **March 3, 2025**, Attorney McClendon filed a "Supplemental Motion for Substitution of Counsel and Declaration of Dana McClendon." (*See Exhibit K)*

16. Based upon information and emails the State has been provided by TDOC and the US Marshal Service, we take issue with paragraphs 9 and 10 in Attorney McClendon's declaration and ask that the record be made clear.

Respectfully Submitted:

/s/ Amy P. Weirich /

Amy P. Weirich, BPR (#014441)
Special Counsel
25th Judicial District
P.O. Box 38
Somerville, Tennessee 38068
(901) 465-7351
apweirich@tndagc.org

/s/ Christopher V. Boiano /

Christopher V. Boiano, BPR (#030076)
Assistant Attorney General
18th Judicial District
113 West Main Street
Cordell Hull Building, 3rd Floor.

4

Gallatin, Tennessee 37066
(615) 451-5810
cvboiano@tndagc.org

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been emailed and mailed to Douglas Bates IV and Crystal Etue, attorneys for Petitioner Adams, on this 7th day of March, 2025.

| | |
|---|---|
| Douglas Thompson Bates, IV | Crystal M. Etue |
| Bates & Bates Law Office | Attorney at Law |
| 406 W. Public Sq., 2nd Floor, | 219 3rd Ave N. |
| Bates Building | Franklin, TN 37064 |
| P.O. Box 1 | **Phone**: 615-721-7983 |
| Centerville, TN 37033 | **Email**: crystal@etuelaw.com |
| dtbates4@bates.law | www.etuelaw.com |

**/s/ Amy P. Weirich /**

_____

Amy P. Weirich

5

# Exhibit A

## IN THE CIRCUIT COURT OF HARDIN COUNTY
## AT SAVANNAH, TENNESSEE

ZACHARY RYE ADAMS         ]
     PETITIONER          ]

VS.                    ]     NO. 17-CR-10-PC

STATE OF TENNESSEE      ]

FILED _22_ DAY OF _Jan_ _2024_ AT _2:30_ AM PM

TAMMIE WOLFE, CLERK

BY _____ CLERK

## DECLARATION OF DR. KATIE SPIRKO

I, Dr. Katie Spirko, do state under oath the following:

1. I am a licensed neuropsychologist who practices in TN. My CV is attached.

2. I have worked in civil and criminal cases ranging from parental evaluations, Rule 35 psychological assessments, family coordinator, and in other criminal cases ranging from diminished capacity and memory issues to forensic evaluations for defenses of NGRI (not guilty by reason of insanity) and potential mitigating circumstances related to a defendant's neuropsychological status.

3. I have worked with Douglas Bates IV in a variety of cases beginning in 2020. I have taken positions to which his client was bitterly opposed. I have taken positions congruent with his client's preferred outcomes.

4. In August of 2023, he contacted me to see if I was interested in possibly being retained in the Zach Adams case to review any particular evidence regarding Jason Autry's testimony and provide appropriate perspective.

5. I have watched the publicly available portions of Zack Adams' criminal trial on YouTube and have reviewed an abundance of evidence pertaining to this case.

6. I have interviewed multiple parties related to this case:



a.  I interviewed Zach Adams on December 1, 2023, in person where he is currently
    incarcerated.

b.  I have interviewed James and Rita Austin, parents of deceased co-defendant
    Shayne Austin.

c.  I have interviewed Lisa Carroll, a resident of the Parsons area in Tennessee, who
    advised me that on the morning of April 13th, 2011, at approximately 7:50am, she
    encountered Terry Britt driving an old brownish truck on Brick Church Road
    while Ms. Carroll was returning from her grandchildren's morning school drop-
    off and the two stopped at the same intersection. At the time, Ms. Carroll was not
    familiar with Mr. Britt, but the encounter stood out to her as suspicious because
    this man, who Ms. Carroll described as a White man in his late 40s or early 50s
    with wavy brown hair approximately shoulder length, was positioning his body in
    an odd manner, seemingly attempting to shield something he was hiding in the
    passenger seat of his truck. Ms. Carroll saw this man on two subsequent
    occasions. She recognized the man as Terry Britt when she later saw him during
    the televised criminal court proceedings for Zack Adams's case. Ms. Carroll
    noted she spoke with a friend about the encounter that day after returning home
    and learning of Holly Bobo's disappearance, and the friend called it into the Holly
    Bobo tip line on Ms. Carroll's behalf. This interview was recorded with Ms.
    Carroll's permission.

d.  I interviewed Janet Britt at her home in the Parsons area of TN on December 17,
    2023, for approximately one hour.

e.  I have interviewed various other neighbors and local residents with first-h knowledge and observations related to this case.

f.  I interviewed Jason Autry in person on December 22, 2023, where he is currently incarcerated. I recorded the interview with Mr. Autry's consent.

g.  During this interview with Mr. Autry, he admitted to falsifying the entire story that served the basis for his testimony at trial. He described in detail how he used TBI investigative reports, telephone records, and other evidence from the Holly Bobo case to fabricate a story implicating Zach Adams while staying consistent with existing evidence. Per Mr. Autry he telephone records and Mr. Autry's best recollection to recreate his activities and whereabouts on April 13, 2011, and "added Holly to it."

h.  Mr. Autry described being pressured by his attorney, Mr. Scholl, to take a plea deal in exchange for providing "testimony," relaying the State "needed a mouthpiece" and that "testifying" was Mr. Autry's only option to avoid imprisonment and a potential death sentence for a crime in which Mr. Autry was not involved and had no firsthand knowledge. Mr. Autry was reportedly given feedback that any juror would think the community is better off with Mr. Autry in prison regardless of his guilt or innocence in this crime, since he is a criminal drug user. Mr. Autry indicated he requested to go to trial but was informed by his defense counsel, Mr. Scholl, that his only option to avoid life imprisonment and potential death was to acquiesce and provide what Mr. Autry stated was false testimony. According to Mr. Autry, he was being told at the time Mr. Adams was also providing false testimony against him, and it would be a race to see who

between himself and Mr. Adams would be given a plea deal in exchange for falsely testifying against the other. At one point, Mr. Autry said "we put it together in 3 days," referring to how he developed his testimony with assistance from his legal counsel and added that General Nichols was the "boss of it all."

i. I have interviewed multiple close acquaintances of Jason Autry, across several occasions, who attest to previous disclosures made by Autry regarding the pressure he was under to provide false testimony in support of the State's case against Zack Adams. One of these acquaintances described a confidential report regarding the analysis of some biological evidence in this case, which was shown to this acquaintance by Mr. Autry during a correctional center visit. Per the acquaintance, Mr. Autry brought the report with him to the visit from a box of evidence he was reportedly provided by his attorney. The description of this evidence was consistent with my review of the original documentation, which to my knowledge, was never made publicly available.

7. Mr. Autry's detailed account of his falsified testimony includes several additional details that I have independently verified through corroborating interviews and/or objective evidence related to this case.

Further declarant sayeth naught.

_Katie Adam Spirko, PsyD_

_____

DR. KATIE SPIRKO                    DATE

# Exhibit B

## Misty Wright

| | |
|---|---|
| **From:** | Katie Spirko <katie.spirko@facts.care> |
| **Sent:** | Monday, April 1, 2024 2:32 PM |
| **To:** | Misty Wright |
| **Cc:** | Dana@danamclendonlaw.com |
| **Subject:** | [EXTERNAL] Inmate Zoom meeting request |

**\*\*\* This is an EXTERNAL email. Please exercise caution. DO NOT open attachments or click links from unknown senders or unexpected email - STS-Security. \*\*\***

Hi Misty,

I am writing to request your assistance in setting up a nonrecorded virtual/videoconference meeting with inmate Zachary Adams (#426285) for this Friday, April 5th (anytime should work). If Friday is not possible for any reason, I could do Thursday, April 4th, at or after 2pm, as an alternate.

HU - 95 / 23

The meeting will be with myself, Dr. Katie Spirko, through attorney Dana McLendon (cc'd). I believe you should already have my driver's license on file, but I'm happy to re-send it if needed. Please let me know if you require anything further to arrange this meeting, and thank you so much for the assistance.

Sincerely,



**Katie Osborn Spirko, PsyD**
Forensic & Clinical Neuropsychologist
FACTS
Family Support and Conflict Resolution Services



  katie.spirko@facts.care

  615-961-2349

  402-680-4229

  2200 21st Ave. S., Suite 401, Nashville, TN 37212

  **facts.care**

 

1

# Exhibit C

**O** Outlook

---

## Fwd: introduction

---

**From** Jennifer S. Nichols <jsnichols@tndagc.org>

**Date** Fri 4/5/2024 1:10 PM

**To**    Christopher V. Boiano <cvboiano@tndagc.org>

FYI-

Get Outlook for iOS

---

**From:** Katie Spirko <katie.spirko@facts.care>
**Sent:** Friday, April 5, 2024 1:07:36 PM
**To:** Jennifer S. Nichols <jsnichols@tndagc.org>
**Cc:** Dana McLendon <dana@danamclendonlaw.com>
**Subject:** introduction

Good Afternoon, Ms. Nichols,

I believe my name has come up in connection with Zach Adams's recent filings. I wanted to reach out directly to make sure you have my direct contact, as well as that of my attorney (cc'd) in case you would like to speak with me. Please do not hesitate to reach out at any point. If it would be helpful to you, I am happy to come meet with you in person.

Thank you,



**Katie Osborn Spirko, PsyD**
Forensic & Clinical Neuropsychologist
FACTS
Family Support and Conflict Resolution Services

---

✉ katie.spirko@facts.care

☎ 615-961-2349

▯ 402-680-4229

◉ 2200 21st Ave. S., Suite 401, Nashville, TN 37212

🔗 **facts.care**

---



The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

LEGAL CONFIDENTIAL: The information in this e-mail and in any attachment may contain information that is privileged either legally or otherwise. It is intended only for the attention and use of the named recipient. If you are not the intended recipient, you are not authorized to retain, disclose, copy or distribute the message and/or any of its attachments. If you received this e-mail in error, please notify me and delete this message.

# Exhibit D

**From:** Clear, Deryl <Deryl.Clear@shelbycountytn.gov> **On Behalf Of** Visitation Office
**Sent:** Monday, April 8, 2024 12:53 PM
**To:** 'Katie Spirko' <katie.spirko@facts.care>; Visitation Office <visitation.office@shelbycountytn.gov>
**Cc:** Dana McLendon <dana@danamclendonlaw.com>
**Subject:** RE: Inmate visitation question

We have a notary on staff. Please give us 48-72 hours and I will respond to this
email. Thanks.

---

**From:** Katie Spirko <katie.spirko@facts.care>
**Sent:** Monday, April 8, 2024 12:41 PM
**To:** Visitation Office <visitation.office@shelbycountytn.gov>
**Cc:** Dana McLendon <dana@danamclendonlaw.com>
**Subject:** Re: Inmate visitation question

Jason Autry



**Katie Osborn Spirko, PsyD**
Forensic & Clinical Neuropsychologist

FACTS
Family Support and Conflict Resolution Services

---

✉ katie.spirko@facts.care

☎ 615-961-2349

▯ 402-680-4229

◉ 2200 21st Ave. S., Suite 401, Nashville, TN 37212

🔗 **facts.care**



The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

On Apr 8, 2024, at 12:26 PM, Visitation Office <visitation.office@shelbycountytn.gov> wrote:

What is the name of the inmate?

---

**From:** Katie Spirko <katie.spirko@facts.care>
**Sent:** Monday, April 8, 2024 11:26 AM
**To:** Visitation Office <visitation.office@shelbycountytn.gov>
**Cc:** Dana McLendon <dana@danamclendonlaw.com>
**Subject:** Inmate visitation question

Good Morning,

I am needing to set up a visitation with an inmate at the Shelby County Penal farm, and I am wondering whether you have a notary service available at the facility or if I would need to bring someone with me to the visit. I am hoping to be able to schedule the visit for this Wednesday at noon, in case that makes a difference.

Thank you,

**Katie Osborn Spirko, PsyD**
Forensic & Clinical Neuropsychologist
FACTS
Family Support and Conflict Resolution Services

✉ katie.spirko@facts.care

☎ 615-961-2349

📱 402-680-4229

📍 2200 21st Ave. S., Suite 401, Nashville, TN 37212

🔗 **facts.care**

---

in 🐦

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

# Exhibit E

## IN THE CIRCUIT COURT OF HARDIN COUNTY
## AT SAVANNAH, TENNESSEE

ZACHARY RYE ADAMS,       )
    PETITIONER,           )
                         )
vs.                    )    No. 17-CR-10-PC
                         )
                         )    FILED **12** DAY OF **April**, **2024** AT **4:30** AM/~~PM~~
                         )               TAMMIE WOLFE, CLERK
STATE OF TENNESSEE,      )    BY **Jannie Wolfe**    (CLERK)
    RESPONDENT.         )

---

### STATE OF TENNESSEE'S MOTION TO ISSUE SUBPOENA TO KATIE SPIRKO
### AND ISSUE PROTECTIVE ORDER

---

COMES NOW the State of Tennessee, by and through the undersigned, and moves this Honorable Court to grant a Protective Order relative to any discovery materials made available to Petitioner Adams' investigator, Katie Spirko, during the time Petitioner's counsel employed her. As grounds therefore, the State of Tennessee would aver:

1.  The state turned over three (3) terabytes of pretrial discovery to attorneys James Simmons and Jennifer Thompson prior to Petitioner Adams' trial in 2017.

2.  Attorneys James Simmons and Jennifer Thompson were Petitioner Adams' lead counsel during Petitioner Adams' trial.

3.  Petitioner Adams' current counsel, Mr. Douglas Bates, advised the undersigned that he received a copy of Ms. Thompson's case file prior to filing the Amended Petition for Post Conviction Relief and thus, did not desire nor need to review the State's copy of the file.

4.  Due to the size and nature of the discovery, there are many instances where individuals' personal and confidential information was included.

1

# Exhibit F

IN THE CIRCUIT COURT OF
HARDIN COUNTY, TENNESSEE
AT SAVANNAH

ZACHARY RYE ADAMS,
    Petitioner

v.                                  No. 17-CR-10-PC

STATE OF TENNESSEE,
    Respondent

## NOTICE OF APPEARANCE

Dana C. McLendon III enters an appearance on behalf of Katie Spirko.

The undersigned counsel requests that the pending motions filed by the State be set on a date and time convenient to the parties, but not on or before May 3, 2024.

Dana C. McLendon III (#016214)
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com

### Certificate of Service

I hereby certify that a true and exact copy of the foregoing has been emailed and mailed on this 15th day of April 2024 to:

Douglas Thompson Bates, IV
Bates & Bates Law Office
406 W. Public Sq., 2nd Floor, Bates Building
P.O. Box 1
Centerville TN 37033

Jennifer Nichols
Christopher V. Boiano
113 West Main Street
Cordell Hull Building, 3rd Floor.
Gallatin, Tennessee 37066
(615) 451-5810

FILED 15 DAY OF April, 2024 AT ___ AM PM
TAMMIE WOLFE, CLERK
BY _____ (CLERK)

# Exhibit G

| Circuit Court<br>Hardin County, Savannah Tennessee | **SUBPOENA** | Case Number<br>17-CR-10-PC |
|---|---|---|

| Zachary Rye Adams | vs. State of Tennessee |
|---|---|
| [Plaintiff's Name] | [Defendant's Name] |

**To:**

Katie Osborn Spirko

551 Bonerwood Drive, Nashville, TN 37201

Phone: (615) 961-2349  |  Email: katie.spirko@facls.care

Under penalty prescribed by law, you are commanded:

☐ 1. *Subpoena for Attendance at Hearing or Trial* – to appear personally before the Circuit Court of Hardin County, 465 Main Street in Savannah Tennessee, on _____ at _____ a.m./p.m., and give testimony, pursuant to Rule 45.01 and 45.05 of the Tennessee Rules of Civil Procedure; when you arrive, you must remain at the court until the judge or a court officer allows you to leave;

☒ 2. *Subpoena for Production of Documentary Evidence (Books, Papers, Documents, etc.)* – to produce and permit inspection, copying, testing, or sampling of the following designated books, papers, documents, electronically stored information, or tangible things: Please see attached list, "SUBPOENA DUCES TECUM ITEMS TO PRODUCE" _____ and to swear or affirm that the things produced are authentic to the best of your knowledge, information, and belief, and to state whether all responsive things have been produced, pursuant to Rule 45.02 of the Tennessee Rules of Civil Procedure; the subpoenaed items must be produced at _____ 406 W. Public Sq., 2nd Floor, Bates Building, on or before March 7, 2025 at 1:30 p.m. a.m./p.m.; Centerville, TN 37033 | Tel: 931-729-4085

☐ 3. *Subpoena for Inspection of Premises* – to permit inspection of the following premises: _____ _____ on _____ at _____ a.m./p.m., pursuant to Rule 45.02 of the Tennessee Rules of Civil Procedure; and/or

☐ 4. *Subpoena for Deposition Testimony* – to appear personally at _____ in _____ Tennessee, on _____ , at _____ a.m./p.m., then and there to testify by deposition in this matter, and to bring the following items: _____ , pursuant to Rule 45.04 of the Tennessee Rules of Civil Procedure.

**Notice for a subpoena for production of documentary evidence (#2 above) or for a subpoena for deposition testimony (#4 above):** The failure to serve an objection to this subpoena within twenty-one days after the day of service of the subpoena waives all objections to the subpoena, except the right to seek the reasonable cost for producing books, papers, documents, electronically stored information, or tangible things.

This subpoena is issued on behalf of ☐ Petitioner ☒ Respondent  The name, address, and telephone number of the issuing party's attorney are: Amy P. Weirich, Special Counsel, 25th Judicial District, P.O. Box 38, Somerville, TN 38068 | 901-465-7351 apweirich@tndagc.org
Christopher V. Boiano, ADA, 18th Judicial District, 113 West Main Street, Cordell Hull Building, 3rd Floor, Gallatin TN, 37066 | 615-451-5810 | cvboiano@tndagc.org
Signature of issuing party's attorney: _____

Date Issued: 2-14-25

_Jannie Wolfe_
Signature of Clerk/Deputy Clerk

For Americans With Disabilities Act (ADA) assistance only, call: 731-925-8166

**NOTICE: YOU CAN BE FOUND IN CONTEMPT OF COURT FOR FAILING TO COMPLY WITH THIS SUBPOENA AND IF FOUND GUILTY OF CONTEMPT YOU MAY BE FINED, IMPRISONED, OR BOTH.**

(This is a general form subpoena. The party issuing the subpoena is responsible for complying with any provision of law imposing additional notice requirements that apply to the pending case or to the type of records being sought under this subpoena.)

FILED 14 DAY OF Feb. , 2025 AT 4 AM/PM
TAMMIE WOLFE, CLERK
BY _Jannie Wolfe_ (CLERK)

| Circuit Court<br>Hardin County, Savannah Tennessee | **SUBPOENA** | Case Number<br>17-CR-10-PC |
|---|---|---|

Zachary Rye Adams _____   vs.  State of Tennessee _____
            [Plaintiff's Name]                              [Defendant's Name]

## RETURN OF SERVICE

Check one of the following boxes: Box 1 or Box 2 is only for the return by an authorized officer, by an attorney, or by an attorney's agent; pursuant to Tenn. Code Ann. § 23-2-105, the return by an attorney or the attorney's agent must be sworn to. Box 3 is only for the person named in the subpoena (or the authorized representative of an organization named in the subpoena) who acknowledges service, and such person must sign in the signature box below.

◻ 1. I certify that on the date indicated below I served a copy of this subpoena on (state the identity of the person served, and the place and manner of service): _____

◻ 2. I was unable to serve a copy of this subpoena on the person named in the subpoena because _____

◻ 3. I acknowledge being served with this subpoena on the date indicated below.

| FOR RETURN BY ATTORNEY OR ATTORNEY'S AGENT:<br><br>Sworn to and subscribed before me on this _____ day of _____ , 20 ___ .<br><br>◻ Notary Public or ◻ Deputy Clerk:<br><br><br>My Commission Expires: | DATE OF SERVICE:<br><br><br>SIGNATURE OF OFFICER, ATTORNEY OR ATTORNEY'S AGENT, OR PERSON ACKNOWLEDGING SERVICE: |
|---|---|

(This is a general form subpoena. The party issuing the subpoena is responsible for complying with any provision of law imposing additional notice requirements that apply to the pending case or to the type of records being sought under this subpoena.)

IN THE CIRCUIT COURT OF HARDIN COUNTY
AT SAVANNAH, TENNESSEE

ZACHARY RYE ADAMS,                    )
   PETITIONER,                       )
                                    )
vs.                                   )        No. 17-CR-10-PC
                                      )
STATE OF TENNESSEE,                   )
   RESPONDENT.                       )

---

### SUBPOENA DUCES TECUM ITEMS TO PRODUCE

---

TO:   Katie Osborn Spirko
       551 Bonerwood Drive
       Nashville, TN 37201
       (615) 961-2349
       katie.spirko@facts.care

1.  Please bring any and all documents and records (or true and correct copies thereof) provided to you or to any third party at your request or direction as part of your involvement with Zachary Rye Adams or any subject matter related to *State of Tennessee vs. Zachary Rye Adams,* Hardin County Circuit Court Case No. 17-CR-10, or these post-conviction proceedings.

2.  Please bring a copy of the professional guidelines that you consider as governing you for your work in this post-conviction case. If more than one organization's guidelines apply, please bring all applicable.

3.  Please provide a list of all cases in which you have given expert testimony either in-person or by deposition in the past five (5) years.

4.  Please bring a copy of all papers submitted for publication or to fulfill academic requirements including, but not limited to, your dissertation.

5.  Please bring a copy of the case file in your possession for *State of Tennessee vs. Zachary Rye Adams,* Hardin County Circuit Court Case No. 17-CR-10.

6.  All computers, laptops, hard drives, backups, and computer information storage devices that you have in your possession, related to *State of Tennessee vs. Zachary Rye Adams* (Hardin County Circuit Court Case No. 17-CR-10) or the post-conviction proceedings (Hardin County Circuit Court Case No. 17-CR-10-PC).

7. All documents, tape recordings, other writings memorializing or in any way recording or reflecting any words, statements, declarations, conversations, or other communications with Jason Autry.

8. All documents, tape recordings, or other writings memorializing or in any way recording or reflecting any words, statements, declarations, conversations, or other communications with Zachary Rye Adams.

9. All documents, tape recordings, or other writings memorializing or in any way recording or reflecting any works, statements, declarations, conversations, or other communications between you and Jennifer Thompson.

10. Please provide a copy of any employment contract that you have with Zachary Rye Adams.

# Exhibit H

IN THE CIRCUIT COURT OF HARDIN COUNTY, TENNESSEE

| | | |
|---|---|---|
| ZACHARY RYE ADAMS | ) | |
| PETITIONER, | ) | |
| | ) | |
| VS. | ) | |
| | ) | NO. 17-CR-10-PC |
| STATE OF TENNESSEE | ) | |
| RESPONDENT | ) | |
| | ) | |

---

## MOTION TO QUASH OR STAY SUBPOENA ON DR. KATIE SPIRKO

---

Comes now Counsel, Cayley J. Turrin, and in accordance with Rule 17 of Tennessee

Rules of Criminal Procedure has filed this motion within the required time period of production.

We would request that the Court quash or in the alternative stay the subpoena due to

T.C.A. § 24-1-208 and T.C.A. § 24-1-209.

T.C.A. § 24-1-208, Persons gathering information for publication or broadcast-Disclosure

states:

"(a) A person engaged in gathering information for publication or broadcast connected with or employed by the news media or press, or who is independently engaged in gathering information for publication or broadcast, shall not be required by a court, a grand jury, the general assembly, or any administrative body, to disclose before the general assembly or any Tennessee court, grand jury, agency, department, or commission any information or the source of any information procured for publication or broadcast.

(b) Subsection (a) shall not apply with respect to the source of any allegedly defamatory information in any case where the defendant in a civil action for defamation asserts a defense based on the source of such information.

(c)(1) Any person seeking information or the source thereof protected under this section may apply for an order divesting such protection. Such application shall be made to the judge of the court having jurisdiction over the hearing, action or other proceeding in which the information sought is pending.

(2) The application shall be granted only if the court after hearing the party determines that the person seeking the information has shown by clear and convincing evidence that:

(A) There is probable cause to believe that the person from whom the information is sought has information which is clearly relevant to a specific probable violation of law;

(B) The person has demonstrated that the information sought cannot reasonably be obtained by alternative means; and

(C) The person has demonstrated a compelling and overriding public interest of the people of the state of Tennessee in the information.

(3)(A) Any order of the trial court may be appealed to the court of appeals in the same manner as other civil cases. The court of appeals shall make an independent determination of the applicability of the standards in this subsection (c) to the facts in the record and shall not accord a presumption of correctness to the trial court's findings.

(B) The execution of or any proceeding to enforce a judgment divesting the protection of this section shall be stayed pending appeal upon the timely filing of a notice of appeal in accordance with Rule 3 of the Tennessee Rules of Appellate Procedure, and the appeal shall be expedited upon the docket of the court of appeals upon the application of either party.

(C) Any order of the court of appeals may be appealed to the supreme court of Tennessee as provided by law.

Under T.C.A. § 24-1-209, Communication between attorney and private detective privileged states, "Communication between an attorney and a private detective or investigator hired by such attorney, while acting in their respective professional capacities shall be privileged communications."

The State has not proven that Dr. Spirko has any information that would not be covered under journalistic privilege or as an investigator in this matter.

THEREFORE, we would request that the Subpoena Duces Tecum that was requested on February 7, 2025, in the matters listed above be quashed or in the alternative stayed immediately.

Respectfully Submitted,

Cayley J. Turrin #35366
Attorney for Dr. Katie Spirko
219 3rd Ave N.
Franklin, TN 37064
(615) 480-3158
turrincayley@gmail.com

## CERTIFICATE OF SERVICE

I certify that the foregoing motion has been faxed to the following on this the 20th day of February 2025.

Amy Weirich
Special Counsel
25th Judicial District
P.O. Box 38
Somerville, TN 38068
(901) 465-7351
apweirich@tndagc.org

Christopher V. Boiano
Assistant Attorney General
18th Judicial District
113 W Main St.
Cordell Hull Building, 3rd Floor
Gallatin, TN 37066
(615) 451-5810
evboiano@tndagc.org

Cayley J. Turrin BPR #035366
Attorney for Dr. Spirko
219 3rd Ave. N.
Franklin, TN 37064
(615) 480-3158
turrincayley@gmail.com

**THIS MATTER IS SET FOR HEARING ON ZOOM ON MARCH 7, 2025 AT 1:30 P.M.**

# Exhibit I

IN THE CIRCUIT COURT OF HARDIN COUNTY, TENNESSEE
AT SAVANNAH

ZACHARY RYE ADAMS,
    Petitioner

v.                             No. 17-CR-10-PC

STATE OF TENNESSEE,
    Respondent

## AGREED ORDER OF SUBSTITUTION OF COUNSEL

At the request of Dr. Katie Spirko, the court approves the substitution of counsel for Dr. Spirko. By this order, Dana C. McLendon III is relieved as counsel for Dr. Spirko and Cayley J. Turrin enters an appearance on behalf of Dr. Spirko.

It is so ORDERED this _____ day of _____, 2025.


_____
J. Brent Bradberry, Judge

Submitted for Entry:

/s/ Dana C. McLendon III
Dana C. McLendon III (#016214)
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com

/s/ Cayley J. Turrin
Cayley J. Turrin (#35366)
Attorney at Law
(615) 480-3158
(615) 807-3153 Fax
219 3rd Ave N
Franklin, TN 37064
turrincayley@gmail.com


Certificate of Service

I hereby certify that a true and exact copy of the foregoing has been mailed on this _____ day of February 2025 to:

Douglas Thompson Bates, IV
Bates & Bates Law Office
406 W. Public Sq.,
2nd Floor, Bates Building
P.O. Box 1
Centerville TN 37033

Christopher V. Boiano
113 West Main Street
Cordell Hull Building, 3rd Floor.
Gallatin, Tennessee 37066
(615) 451-5810

# Exhibit J

IN THE CIRCUIT COURT OF HARDIN COUNTY, TENNESSEE
AT SAVANNAH

ZACHARY RYE ADAMS,
Petitioner

v.                                                          No. 17-CR-10-PC

STATE OF TENNESSEE,
Respondent

AGREED ORDER OF SUBSTITUTION OF COUNSEL

Pursuant to Rule 1.16 of the Rules of Professional Conduct, and at the request of Dr. Katie

Spirko, the undersigned counsel moves the court to relieve him as counsel for Dr. Spirko and to

approve the substitution of counsel for Dr. Spirko of Cayley J. Turrin.

THIS MOTION IS EXPECTED TO BE HEARD ON 07 MARCH 2025 AT 1:30 PM ON THE COURT'S
EXISTING MOTION DOCKET IN THE CAPTIONED CASE

*/s/ Dana C. McLendon III*
Dana C. McLendon III (#016214)
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com


Certificate of Service
I hereby certify that a true and exact copy of the foregoing has been emailed on this 25 day
of February 2025 to:

Douglas Thompson Bates, IV          Christopher V. Boiano
Bates & Bates Law Office            113 West Main Street
406 W. Public Sq.,                  Cordell Hull Building, 3rd Floor.
2nd Floor, Bates Building           Gallatin, Tennessee 37066
P.O. Box 1                          (615) 451-5810
Centerville TN 37033


Cayley J. Turrin (#35366)
Attorney at Law
(615) 480-3158
(615) 807-3153 Fax
219 3rd Ave N
Franklin, TN 37064
turrincayley@gmail.com



# Exhibit K

**IN THE CIRCUIT COURT OF HARDIN COUNTY, TENNESSEE**
**AT SAVANNAH**

ZACHARY RYE ADAMS,
   Petitioner

v.                                        No. 17-CR-10-PC

STATE OF TENNESSEE,
   Respondent

### SUPPLEMENTAL MOTION FOR SUBSTITUTION OF COUNSEL

### AND DECLARATION OF DANA C. MCLENDON III

Pursuant to Rule 1.16 of the Rules of Professional Conduct, and at the request of Dr. Katie Spirko, the undersigned counsel moves the court to relieve him as counsel for Dr. Spirko and to approve the substitution of counsel for Dr. Spirko of Cayley J. Turrin.

Under penalty of perjury, the undersigned counsel states as follows in support of the motion to withdraw:

1. My name is Dana C. McLendon III. I am an attorney licensed to practice law in Tennessee. I have been an attorney in good standing in the state and federal courts of this state since 1993.

2. My initial involvement in this case arose because the state of Tennessee filed a motion on April 12, 2024 to subpoena Dr. Katie Spirko and subject her to a protective order.

3. I filed a notice of appearance on behalf of Dr. Spirko on April 15, 2024.

4. The state filed on June 20, 2024 a notice striking the motion to subpoena Dr. Spirko. That appeared to resolve any reason Dr. Spirko might need my assistance in this case.

5. Until I filed the agreed order to substitute counsel for Dr. Spirko in late February 2025, I had filed nothing else in this case.

6. It is my understanding some confusion has arisen about my role in this case.

7. I have NEVER spoken to Zach Adams.

8. I have NEVER participated in any electronic communication with Zach Adams.

9. I have NEVER represented to anyone that I represent Zach Adams.

10.    It is my belief that Special Prosecutor Nichols was actually aware, not later than April 5, 2024, that my role in this case was limited to representing Dr. Spirko. I am aware of communications in early April 2024 from Mr. Bates and Dr. Spirko to Special Prosecutor Nichols and TDOC representatives resolving any such misunderstanding, if indeed any ever existed.

11.     Specifically, I believe that not later than April 5, 2024 my role in this case as Dr. Spirko's attorney, and the fact of Mr. Bates' continuing representation of Zach Adams, and the difference between who represented Dr. Spirko and who represented Zach Adams, was made clear by electronic communication to Special Prosecutor Nichols and to officials with the Tennessee Department of Correction.

12.     Dr. Spirko and I subsequently decided to produce a podcast covering the captioned case.

13.     Mindful of my obligations under Rule 1.16 and 3.6 of the Rules of Professional Conduct, it is appropriate for me to withdraw as counsel for Dr. Spirko.

**THIS MOTION IS EXPECTED TO BE HEARD ON 07 MARCH 2025 AT 1:30 PM ON THE COURT'S EXISTING MOTION DOCKET IN THE CAPTIONED CASE**

DCMcLIII

*Dana C. McLendon III*

Dana C. McLendon III (#016214)
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com

Certificate of Service

I hereby certify that a true and exact copy of the foregoing has been emailed on this 03 day of March 2025 to:

Douglas Thompson Bates, IV
Bates & Bates Law Office
406 W. Public Sq.,
2nd Floor, Bates Building
P.O. Box 1
Centerville TN 37033

Christopher V. Boiano
113 West Main Street
Cordell Hull Building, 3rd Floor.
Gallatin, Tennessee 37066
(615) 451-5810

Cayley J. Turrin (#35366)
Attorney at Law
(615) 480-3158
(615) 807-3153 Fax
219 3rd Ave N
Franklin, TN 37064
turrincayley@gmail.com